ATLANTIC TRUST COMPANY v. CHAPMAN, RECEIVER OF THE WOODBRIDGE CANAL AND IRRIGATION COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 109.   Argued January 15, 16, 1908.—Decided February 24, 1908.

A receiver, as soon as he is appointed and qualifies, comes under the sole direction of the court and his engagements are those of the court, and the liabilities he incurs are chargeable upon the property and not against the parties at whose instance he was appointed and who have no authority over him and cannot control his actions.

While cases may arise in which it may be equitable to charge the parties at whose instance a receiver is appointed with the expenses of the receivership, in the absence of special circumstances the general rule, which is applicable in this case, is that such expenses are a charge upon the property or fund without any personal liability therefor on the part of those parties; and the mere inadequacy of the fund to meet such expenses does not render a plaintiff who has not been guilty of any irregularity liable therefor.

145 Fed. Rep. 820, reversed.

THE facts are stated in the opinion.

Mr. Stanley W. Dexter, with whom Mr. Edward B. Whitney was on the brief, for petitioner:

The Circuit Court was without power to compel the complainant to pay the deficit of a receivership which was in all respects regular, after final judgment in complainant's favor.

There is no inherent power in any court to award costs, in the absence of statute, and where costs are authorized by statute, they follow the judgment and are taxed to the losing party, as was done in this case. Wallace v. Sheldon, 76 N. W. Rep. 418 (Nebraska); In re Commissioners, 20 App. Div. 271 (New York); In re City of Brooklyn, 148 N. Y. 107.

Priority is given to the compensation of receivers and their solicitors over receiver's certificates, and such allowances have

sometimes been called "costs of the proceeding to be paid out of the fund." *Petersburg Savings Co.* v. *Dellatorre*, 70 Fed. Rep. 643; *Radford* v. *Folsom*, 55 Iowa, 276.

There is no suggestion, however, that they can be taxed against a successful party, and in the present case, the receiver and his solicitors have been paid.

The receiver's counsel has in prior arguments urged certain provisions of the California Code. It seems unnecessary for us to discuss these, since the equity practice of the Federal courts is uniform throughout the United States and does not in any respect follow that which prevails in the various localities. 1 Foster's Fed. Prac. (3d ed.), pp. 10–12, 120–121; *Boyle* v. *Zacharie*, 6 Pet. 648, 658; *First National Bank* v. *Ewing*, 103 Fed. Rep. 168, 194; *Kirby* v. *Lake Shore R. R.*, 120 U. S. 130, 137; *Goodyear Co.* v. *Dancel*, 119 Fed. Rep. 692; *Phinizy* v. *Augusta Railway Co.*, 98 Fed. Rep. 776. Even in common law actions costs are not governed by provisions of state legislation. *United States* v. *Treadwell*, 15 Fed. Rep. 532.

Prior to the decision of this case the only authority directly in point was that approved and followed by Judge Morrow. See *Farmers' Loan & Trust Co.* v. *Oregon Pacific R. R. Co.*, 31 Oregon, 237, fully sustaining petitioner's contention.

The receiver is not the agent of the plaintiff in the litigation nor does the plaintiff have any control or authority over him. He is agent and executive officer of the court which takes possession of the property which is the subject of dispute, and controls and operates it for the use and benefit, not of either party to the controversy, but of whomsoever in the end may be concerned in its disposition. His acts and possession are the acts of the court and the parties to the litigation have no control over his actions nor any power to determine what liabilities he may incur.

The receiver's employés must look to the property in the court's hands and the income therefrom for the payment of their compensation. Their wages are not costs of the litigation in any sense, and, though incurred during the pendency of the

suit, they are not incurred in the suit. They are not expenses of either side of the controversy and are not costs or fees which can be charged against the successful party to the litigation. *Farmers' Loan & Trust Co.* v. *Oregon Pacific R. R. Co.*, 31 Or gon, 237. And see *Booth* v. *Clark*, 17 How. 322, 331; *Davis* v. *Gray*, 16 Wall. 203, 218; *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112.

This court has always maintained the position that a receiver is an agent of the court and derives no authority from the act of the parties at whose suggestion or by whose consent he is appointed. *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223, 236; *Quincy, Missouri & Pacific R. R. Co.* v. *Humphreys*, 145 U. S. 82, 97. The lower Federal courts have maintained the same doctrine. *Texas & St. Louis Ry. Co.* v. *Rust*, 17 Fed. Rep. 275, 282; *Central Trust Co.* v. *Wabash, St. Louis & Pacific Railway Co.*, 23 Fed. Rep. 863; *New York, P. & O Ry. Co.* v. *New York, L. E. & W. Ry. Co.*, 58 Fed. Rep. 268, 278.

The only pledge that the court made, or could lawfully make, was that the fund in court would be impressed with a paramount lien in favor of the receiver's creditors, and that it would enforce such lien against the property and parties as a condition of releasing the property. Taft, J., 58 Fed. Rep. 15. See also Beach on Receivers, § 416; *Meyer* v. *Johnson*, 53 Alabama, 237, 348, 349; *Turner* v. *Peoria &c.*, 95 Illinois, 134, 145; *Kneeland* v. *American Loan Co.*, 136 U. S. 89, 98.

*Mr. Edgar C. Chapman*, respondent, in person:

The Circuit Court has power to compel petitioner to pay the deficit of the receivership.

In railroad receiverships (and the case at bar is similar) it has been uniformly held that the courts have the power to decree reimbursement to the receiver out of the income of the property and if that is not sufficient then out of the *corpus*, before payment of the mortgage debt is allowed.

The theory upon which courts have thus proceeded is that

the court has pledged its faith to the payment of the expenses of the receivership.  As the court has no property of its own with which to operate the railroads, it must, in order to keep faith with those whom it employs,—redeem its pledge by either resorting to the fund brought into court or else to the party at whose instance and upon whose showing it was induced to undertake the management of the property.  This power is inherent.  It does not depend upon consent or arise from contract.  Alderson on Receivers, § 332.

If a court has the power to redeem some of its pledges by resorting to the fund in its possession for that purpose, it has also the power to redeem all of its pledges by resorting to the party that induced it to appoint the receiver, assuming that such party is able to respond.

Property cannot be administered by the court and kept a "going concern," without expense.

The court must not knowingly order expenses to be incurred that it has no intention of seeing paid.

When the court places a receiver in charge of property on representations made to it by a complainant, with orders to contract such indebtedness as appears needful, it is to be presumed that reliance shall be placed upon the court for the payment of this indebtedness.

Ordinarily the fund is sufficient to protect the court and its officers and employés, and the court is not compelled to proceed further.  And this is why there is a dearth of decisions on the precise question presented by the case at bar, namely, the power of the court to look beyond the property administered upon where it fails, or proves insufficient to the complainant to make up the deficiency.

That the court has this power in a proper case, and the case at bar is such an one, there is no doubt.  See *Knickerbocker* v. *McKindley C. & M. Co.*, 67 Ill. App. 295; *Pacific Bank* v. *Madera Fruit Co.*, 124 California, 525; *Ephraim* v. *Pacific Bank*, 129 California, 589; also cases cited by Judge Ross in *Chapman* v. *Atlantic Trust Co.*, 119 Fed. Rep. 270.  *Farmers' Loan*

& *Trust Co.* v. *Oregon Pacific R. R. Co.*, 31 Oregon, 237, discussed and distinguished.

MR. JUSTICE HARLAN delivered the opinion of the court.

The principal question in this case—now before us upon writ of certiorari for the review of a final order of the Circuit Court of Appeals for the Ninth Circuit—is stated by counsel to be this: Is a complainant, who has in good faith prosecuted a suit upon a good cause of action, and upon whose application the court has properly appointed a receiver, and who obtains a decree fully establishing his rights, nevertheless personally responsible for a deficiency caused by the failure of the property which is the subject of the suit to bring enough to cover the allowances made by the court to the receiver and his counsel, and the expenses which the receiver, without special request of the complainant in any instance, had incurred?

The Woodbridge Canal and Irrigation Company, a corporation of California, executed July 17, 1891, a mortgage conveying all its property and franchises to the Atlantic Trust Company, a New York corporation, in trust to secure certain bonds, with interest coupons attached, issued by the mortgagor company for the purpose of raising money to fully complete and equip its canal and headworks, and of paying its indebtedness then existing or to be subsequently incurred. The bonds were made payable with interest semi-annually at the office of the Trust Company in the city of New York.

In the event of default in the payment of semi-annual interest on the bonds for six months, or of any tax or assessment for the same period, the trustee and its successors were authorized, on the written request of the majority of the holders of the outstanding bonds, or, if the principal of the bonds shall be due, upon the request of the holders of outstanding bonds, to take actual possession of the mortgaged property, and by themselves or agents hold, use and enjoy

the same, and from time to time make repairs, replacements, alterations, additions and improvements as fully as the company might have done before such entry, and receive all tolls, income, rents issues and profits arising from the property. The trustee and its successor or successors were authorized, on such default, to sell the mortgaged property at public auction, after at least two months' notice, and execute to the purchaser or purchasers a deed in fee simple, or otherwise, for all the right, title, interest and estate reversionary or in possession which they might be entitled to receive, have or hold of the company, such sale to be a complete bar against the company, its successors or assigns, and all persons claiming from or under it.

The mortgage made provision as to the disposal of moneys received from tolls, income, profits, etc., and provided that "nothing herein shall be construed as limiting the right of the trustee to apply to any competent court for a decree of foreclosure and sale under this indenture, or for the usual relief in such proceedings, and the said trustee, or its successor, may, in its discretion, so proceed."

The Canal and Irrigation Company, having made default in the payment of the principal and interest due on its bonds, its board of directors, by formal action, recognized their inability to meet its obligations, and requested the trustee to bring the present suit for the foreclosure of the mortgage, and enforce the payment of the principal and interest of the bonds. The bringing of the suit was also in conformity with the written request of the owners and holders of fifty-five of the outstanding bonds, who expressed their election and option that the principal of the bonds should forthwith become due and payable.

The bill filed by the Trust Company prayed: 1. That a receiver be appointed to take charge of the mortgaged property and to maintain and operate the canals pending the suit and until sale under a judgment of foreclosure. 2. That the court ascertain the number and amount of outstanding bonds, fix

the compensation of the receiver and his attorney, and that the plaintiff have judgment against the Canal and Irrigation Company, for the amount due for principal and interest on the bonds, and for attorney's fee, trustee's commissions, costs and expenses of the suit. 3. That the mortgaged property be sold at public auction, and that out of the proceeds the expenses of sale, costs of suit, trustee's commissions and counsel fees be paid, the balance to be applied in payment of outstanding bonds.

The court, on motion of the Trust Company, the Canal and Irrigation Company appearing and consenting thereunto, appointed E. C. Chapman receiver of the mortgaged property, with authority to take possession of it. The receiver was empowered by the order of court to continue the operation of the main and branch canals of the mortgagor company in the usual and ordinary way as the same were then operated, discharging, so far as practicable, contracts for water supplies entered into by the company, collecting rents, tolls, and moneys payable under water contracts, keeping the property in good condition and repair, employing needful agents and servants at such compensation as he deemed reasonable, paying for needful labor, supplies and materials as might seem to him to be necessary and proper in the exercise of a sound discretion, "with leave to apply to the court from time to time as he may be advised for instructions in the premises." "He shall," the order proceeded, "do whatever may be needful to preserve and maintain the corporate franchises of said defendant corporation and its rights to the use of the water and all its property, until final judgment in this action, and to defray the necessary and proper expenses incident thereto." The above order was made October 3, 1894.

In the progress of the cause the receiver, upon his own motion and not, so far as the record shows, by direction of the plaintiff, applied to the court and obtained its authority to borrow money and issue certificates, which were used by him in the operation of the property, paying debts, etc.

Certain parties were permitted to intervene and the litigation lingered until September 18, 1897, when a decree of foreclosure and sale was entered, nearly three years after the receiver was appointed. There was great difficulty in effecting a sale, partly because of the washing away of a dam. Finally, a bid of $21,000 by one Thompson, acting on behalf of the receiver and his attorneys, was accepted. That amount was just enough to cover the fees of the receiver and his counsel and the expenses of the sale and to make a small *pro rata* payment on the accrued interest on receiver's certificates. This left unpaid all other expenses and certificates of the receiver. The sale was confirmed August 15, 1898, and the commissioner was directed to deliver a deed for the property.

The order confirming the sale directed the clerk of the court to report the balance remaining unpaid on account of the fees of officers or appointees of the court, or of advances made by them, and on account of receiver's certificates, time checks or other expenses of the receiver's administration. The order also directed the receiver to render an account of his receipts, disbursements and expenses in the management and care of the property between the date of the decree of foreclosure and the date of the sale and transfer of possession.

The clerk made the required report, from which it appeared that the proceeds of sale, $21,000, were absorbed by these claims: Compensation of receiver, $9,000; receiver's attorneys, $9,000, and fees of commissioner, master, advertising, etc., $3,000. He further reported that of the amounts found due by the decree of foreclosure of September 18, 1897, there remained unpaid, on the following accounts, these sums: Receiver's certificates, $12,292.47; receiver, for advance made by him, care and management of property, $3,105.72; time checks issued by receiver, $5,728.89; work done for receiver, $2,269.85; expenses of operating canal system, $5,728.54; other sums, $13,723.49; total, $42,848.96.

On the third of August, 1899, nearly five years after the appointment of the receiver, he filed his final report and peti-

tion, in which he prayed that the balance due him on account of his receipts and disbursements after the making of the decree, also the balance due to his employés after the making of the report upon which the decree was based, and the compensation to be allowed to him and his counsel since the date of the decree, be fixed and established by the court, and judgment entered *"against the plaintiff* in this cause for the full amount of the deficiency hereinbefore stated, with the sums so allowed for services and expenses since the date of said decree, and that the proper process of court be issued for the collection thereof from plaintiff, and that when collected the same be paid into court to be by the court disbursed to the several persons entitled thereto."

The petition alleged that the Canal and Irrigation Company was insolvent and unable to respond to any judgment for deficiency that had been or might be entered in the cause. Upon this report and petition being filed the Circuit Court ordered the Trust Company to show cause why the amount due the receiver and his employés should not be settled and allowed, and why judgment for such deficiency should not, when ascertained, be entered against that company and it be required to pay the same into court.

The Trust Company appeared and demurred to the receiver's report and motion for judgment against it. The Circuit Court, after hearing, sustained the demurrer and discharged the rule to show cause. Upon appeal to the Circuit Court of Appeals the order of the Circuit Court was reversed, the former court being of opinion that the Trust Company was liable to a personal judgment for the alleged deficiency. *Chapman* v. *Atlantic Trust Co.*, 119 Fed. Rep. 257.

The grounds upon which the Circuit Court and the Circuit Court of Appeals, respectively, proceeded appear in the margin.[1]

---

[1] CIRCUIT COURT—JUDGE MORROW: "I am of the opinion that provisions should have been made when this suit was commenced, or at the time when the Receiver was appointed, for the payment of or security for the amount of his expenses, and for the redemption of whatever certificates might be

Upon the return of the case to the Circuit Court the Trust Company filed its answer to the receiver's petition, and the cause was submitted, by consent, as upon bill and answer, on

issued by him, in the event that the proceeds of the sale of the property should prove insufficient. But such provision was not made at the time by the court, and I am of the opinion that the court is without authority to do so now. In *Farmers' Loan Co.* v. *Oregon Pacific R. R. Co.*, 31 Oregon, 237, this question was fully considered, and the views there expressed are in accord with my opinion in the present case."

CIRCUIT COURT OF APPEALS—JUDGE ROSS, 119 Fed. Rep. 268: "Those who render services in and about the receivership are justly entitled to be paid the fair value of such services, and when the issuance of receiver's certificates becomes necessary for the proper preservation of the property, and such certificates are authorized by the court to be issued by the Receiver for money to be used for such purposes, those who buy the obligations are entitled to have them paid. How? In cases like the present, out of the property or its proceeds, certainly. No one, we apprehend, will question that. But the property having been sold for but a trifle more than the amount theretofore allowed the Receiver and his attorney for their services in and about the receivership, and they credited with such allowance on their bid, who is to suffer? The complainant, at whose instance the Receiver was appointed, or those who, relying upon his acts, based upon the authority and sanction of the court, invested their money and rendered their services in and about the operation and preservation of the property? It is not difficult to determine on which side of this question are the equities. With due deference we are unable to see any force in the suggestion of the Supreme Court of Oregon in the case cited that, as the complainant in such a suit has no control over the Receiver, if he be held liable for the expenses of the receivership, in the event the property prove insufficient to pay them, he may be bankrupted. At the same time it is conceded by that learned court that where it appears probable that the property will prove insufficient, the court may require, as a condition to the appointment of a receiver, a guaranty of the payment of the expenses of such officer, and a like guaranty subsequently, on pain of the discharge of the Receiver, when it becomes evident that the property will prove insufficient to pay the expenses. The theory of this manifestly is, that in these two instances the complainant can inform himself of the probable outcome of the property, and if he be not willing to give the guaranty he will not secure the appointment of a Receiver in the one instance, or his continuance in office in the other. But why should he not be required to inform himself, also, when no such condition is imposed by the court? Precisely the same opportunity on complainant's part, and precisely the same duty to inform himself in that respect, exists in the absence of the requirement of the guaranty mentioned. The complainant, whose lien upon the property it is sought to foreclose, in the nature of things, must and should be held to have much better information regarding the value

the issues joined by the receiver's final report and petition, and the answer of the Trust Company. In conformity with the opinion of the Circuit Court of Appeals the Circuit Court gave personal judgment against that company for $36,207.57, as the amount due the receiver. That judgment was affirmed by the Circuit Court of Appeals. *Atlantic Trust Co.* v. *Chapman*, 145 Fed. Rep. 820.

We are of opinion that the Court of Appeals erred in holding that the Trust Company was liable for the deficiency found to exist. No such liability could arise from the simple fact that it was on plaintiff's motion that a receiver was appointed to take charge of the property pending the litigation. The motion for a receiver was to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. The circumstances seemed to have justified the motion, but whether a receiver should have been appointed or not was in the sound discretion of the court. Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer or creature, the receiver. In *Booth* v. *Clark*, 17 How. 322, 331, it was said: "A receiver is an indifferent person between parties, appointed by the court to receive the rents, issues or profits of land, or other thing in question in this court, pending the suit, where

---

of the property and its probable outcome than the court. Indeed, it is not easy to see how the court can be properly expected to know anything about it. The appointment of a Receiver, if made at all, is usually made at the request of the complainant—occasionally, as in the case at bar, with the consent of the defendant. If the complainant was not willing to pay the expenses of the receivership it asked for, in the event of the insufficiency of the property to do so, it should not have asked the court to make the appointment, incur the liabilities, and pledge its faith to their payment. It was the duty of the complainant to keep informed in respect to the progress of the receivership, the property, and its probable outcome, and whenever it became unwilling to further stand good for any deficiency, to ask the court to bring to an end the business it undertook and was conducting on complainant's petition."

it does not seem reasonable to the court that either party should do it. Wyatt's Prac. Reg. 355. He is an officer of the court; his appointment is provisional. He is appointed in behalf of all parties, and not of the complainant or of the defendant only. He is appointed for the benefit of all parties who may establish rights in the cause. The money in his hands is in *custodia legis* for whoever can make out a title to it. *Delany* v. *Mansfield,* 1 Hogan, 234. It is the court itself which has the care of the property in dispute. The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court. *Verplanck* v. *Mercantile. Insurance Company,* 2 Paige, C. R. 452." In *Porter* v. *Sabin,* 149 U. S. 473, 479, the court said: "When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate; the possession of the receiver is the possession of the court; and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it," citing *Wiswall* v. *Sampson,* 14 How. 52, 65; *Peal* y. *Phipps,* 14 How. 368, 374; *Booth* v. *Clark,* 17 How. 322, 331; *Union Bank* v. *Kansas City Bank,* 136 U. S. 223; *Thompson* v. *Phenix Ins. Co.,* 136 U. S. 287, 297. Ought the receiver, in this case, to have been authorized to burden the property with indebtedness on account of money borrowed or on account of certificates which should become a first lien? Ought some limit have been put on expenses of that kind? These were matters to be determined by the court in the light of all the circumstances. It was for the court to say whether the Canal and Irrigation Company should be kept on its feet by moneys borrowed or obtained, under its orders, by the receiver. The wishes of the parties could not control as to such matters. Indeed they need not in strictness have been consulted as to what should be done from time to time in the management of the property. If the situation was such as to render it uncertain or doubtful whether the property

would ultimately bring, at a sale, enough to meet the expense incurred in connection with its management, the court might well have declined to permit its receiver to issue certificates or to borrow any money on the property as security for its payment. So, if the condition and apparent prospects of the property made such a course proper, the court, in the exercise of a sound judicial discretion and looking to the interests of all who might be affected by its action, could, at the outset, have made it a condition of the appointment of a receiver that the plaintiff and those whom it represented should be liable for any deficiency in the funds required for the expenses of the receivership; or it might have made it a condition of any order authorizing receiver's certificates or the borrowing of money, that the plaintiff, or those whom it represented, should make good any deficiency that might be disclosed after applying the proceeds of the sale according to the rights of parties. Still further, the court—if it had been proper, under all the circumstances, to pursue such a course—could have refused to operate the canals in question at all and required the parties to proceed to a final decree of foreclosure and sale at the earliest practicable moment. But none of these things were done. Under the responsibility imposed upon it by law, the court determined to carry on the business of the Canal and Irrigation Company for a time; and, under the same responsibility, it authorized the receiver to borrow money, issue receiver's certificates, and incur expenses, without any security for indebtedness incurred in this way, except the property or the fund in the control of the court, and the good faith, discretion and care of the court in its administration. No other security seems to have been contemplated by the court or the receiver or any party to the cause. No hint or warning was given, in the progress of the cause, that the absent trustee was to be liable in the event that the property or fund under the control of the court proved insufficient to meet the expenses of the receivership. The Trust Company, it is true, invoked the jurisdiction of the court by bringing this suit for foreclosure and sale and

making a motion for the appointment of a receiver to hold and manage the property *pendente lite*. That, surely, the Trust Company had the right to do, but it did not thereby make itself ultimately liable for money borrowed and receiver's certificates issued by order of the court. The one person who was in a position to inform the court from time to time of the condition and probable value of the property, and of what was or what seemed to be necessary in order to preserve it for the parties interested in it, was its officer and representative, the receiver. It was at his instance and because of his report of the condition and needs of the property, that money was borrowed and certificates issued in order that expenses incurred in the administration of the property might be met. To hold the Trust Company liable for indebtedness thus created would be most inequitable, and would not, we think, be in accord with sound principle.

It is true that cases are cited in which the party bringing a suit, in which a receiver is appointed, has been held liable for expenses incurred by the receiver in excess of the proceeds arising from the sale of the property. But in most, if not in all, of those cases the circumstances were peculiar and were such as to make it right and equitable, in the opinion of the court, that that should be done. As, for instance, in *Ephraim* v. *Pacific Bank*, 129 California, 589, 592, in which arose a question as to the party to whom a receiver should look for reimbursement or payment of his expenses, the court recognized the fact that the general rule that the compensation of a receiver was a charge upon the fund in his hands did not apply without qualification to every case, and said: "If he [the receiver] has taken property into his custody under an irregular, unauthorized appointment, he must look for his compensation to the parties at whose instance he was appointed, and the same rule applies if the property of which he takes possession is determined to belong to persons who are not parties to the action, and is taken from his possession by paramount authority. As to such property his appointment as receiver was

unauthorized and conferred upon him no right to charge it with any expenses." In *Farmers' Nat. Bank* v. *Backus*, 74 Minnesota, 264, 267, the Supreme Court of Minnesota said: "The second proposition is that, a receiver being an officer of the court, subject to its control, and not to that of the party asking for his appointment, his fees and expenses are chargeable solely against the fund which comes into his hands as receiver. The parties to the action are not personally liable therefor, unless they have given a bond or other contract to pay them as a condition of the appointment or continuance of the receiver. This may be conceded to be correct as a general rule, but there are cases where the court will, if the fund in court be insufficient to give the receiver reasonable compensation and indemnity, require the parties at whose instance he is placed in possession of the property to pay him. *Johnson* v. *Garrett*, 23 Minnesota, 565; *Knickerbocker* v. *McKindley Co.*, 67 Ill. App. 293; High, Rec. § 796. The special facts of this case fully justify the order of the trial court. It is not a case where the party asking for the appointment of a receiver is required to pay the receiver's charges without having received any benefit from the receivership. It is a case where the benefits so received were more than five times as great as the amount required to be paid. . . . The order of the court requiring the appellant to pay the receiver is, in effect, the enforcement of the receiver's equitable right to be paid from a fund growing out of the receivership." In *Cutter* v. *Pollock*, 7 N. Dak. 631, 634, the Supreme Court of North Dakota, speaking by its chief justice said: "We do not believe that any case can be found to uphold the palpably unjust rule that one who is shown to have had no right to maintain the action, and no interest whatever in the property which he claims, can require that the defendant, who has paid out of his own pocket the expenses of a receivership, shall not call upon him (the plaintiff in the action) for reimbursement." See High on Receivers (3d ed.), § 796; Beach on Receivers, § 774.

The above cases relied upon in the Circuit Court of Appeals—

and others of like kind could be cited—proceeded upon their special facts. They do not, in our judgment, authorize the order made by that court, although they tend to support the rule that cases *may* arise in which, because of their special circumstances, it is equitable to require the parties, at whose instance a receiver of property was appointed, to meet the expenses of the receivership, when the fund in court is ascertained to be insufficient for that purpose. Here, it is not asserted that the plaintiff trustee was not in the exercise of his strict rights when bringing a suit for foreclosure and sale and asking that the property be put in possession of a receiver. It gave no assurances as to the probable value of the property or of the profits to arise from its management. It misled no one who loaned money to the receiver, or who purchased the certificates. It acted as an ordinary litigant, submitting to the action of the court in all particulars. We do not think that the mere insufficiency of the property or fund to meet the expenses of a receivership entitled the receiver to hold the plaintiff in the suit personally liable, if all that could be/said was that he instituted the suit and moved for the appointment of the receiver to take charge of the property and maintain and operate it pending the suit. A receiver, as soon as he is appointed and qualifies, comes, as we have said, under the sole direction of the court. The contracts he makes or the engagements into which he enters, from time to time, under the order of the court, are, in a substantial sense, the contracts and engagements of the court. The liabilities which he incurs are liabilities chargeable upon the property under the control and in the possession of the court and not liabilities of the parties. They have no authority over him and cannot control his acts.

When neither the order appointing a receiver nor the order authorizing him to borrow money and issue certificates was conditioned upon the plaintiff (in a suit for foreclosure and sale) being liable for the expenses of the receivership, and when no special circumstances appear which, upon equitable principles, would authorize the court to fix liability upon the plain-

tiff for such expenses, the general rule should be applied which makes such expenses a charge upon the property or fund under the control of the court, without any personal liability therefor upon the part of the plaintiff who invoked the jurisdiction of the court. The mere inadequacy of the property or fund to meet such expenses constitutes in itself no reason why liability should be fastened upon the plaintiff, who has been guilty of no irregularity, and who, so far from seeking any improper advantage, has succeeded in his suit by obtaining the relief asked, namely, a decree of foreclosure and sale.

The considerations which, in our judgment, should control in cases like this are well stated by the Supreme Court of Oregon in the above case of *Farmers' Loan Co.* v. *Oregon Pacific R. R. Co.*, 31 Oregon, 237. That, it is true, was the case of a railroad receivership, but what is said is equally applicable to other *quasi*-public corporations having public duties to perform, as in the case of water and irrigation companies. The particular question in that case was whether the plaintiff in a suit brought to foreclose a railroad mortgage could be held liable for the wages of employés of the receiver, who had no funds with which to pay them, having exhausted his power to float receiver's certificates. After observing that the plaintiff, at whose instance a receiver is appointed thereby consents to the absolute control and management of the mortgaged property by the court and its agents and to the priority of claims for the expenses incurred in its operation and management, and after declaring that it was not perceived upon what ground it could be claimed that, because the expenses of the receivership were allowed without any fault of his to exceed the value of the mortgaged property, thus entirely destroying his security, he must, in addition to the loss of his debt, be compelled to make good the deficit, unless the order of appointment was made upon that condition, the court in that case proceeded to say (p. 247): that the plaintiff "has no control over the acts of the receiver, and if, without his consent, he is to be held responsible therefor, he is liable to absolute bankruptcy and ruin." Such a

rule would render the plaintiff's position so uncertain and precarious as practically to preclude him from any protection whatever through the appointment of a receiver pending the foreclosure suit. But the inquiry is made, 'shall not a railroad mortgagee who applies for and obtains the appointment of a receiver, with authority to operate the road, be held responsible for the liabilities incurred by such officer when they cannot be made out of the property itself?' We think not, unless such responsibility was imposed as a condition to the appointment or the continuance of the receiver in office. The appointment of a receiver in a suit to foreclose a railroad mortgage is not a matter of strict right, but rests in the sound judicial discretion of the court; and it may, as a condition to issuing the necessary order, impose such terms as may, under the circumstances of the particular case, appear to be reasonable, and, if not acceded to, may refuse to make the order. 30 Am. L. Rev. 161; *Fosdick v. Schall,* 99 U. S. 235. If, therefore, upon an application for the appointment of a railroad receiver, it appears probable that the income and corpus will prove insufficient to pay the expenses and liabilities thereof, we have no doubt that the court may require of the plaintiff, as a condition to such appointment, a guaranty of the payment of the expenses of such officer. And if, at any time after the appointment has been made, it become apparent to the court that it will be unable to pay and discharge the present or future liabilities incurred by its executive officer and manager, it should refuse to continue the operation of the road under the receiver, unless its expenses are guaranteed. No court is bound or ought to engage or continue in the operation of a railroad or any other enterprise without the ability to promptly discharge its obligations, and, unless it can do so, it should keep out or immediately go out of the business. But, unless such terms are imposed as a condition of the appointment or continuation in office of the receiver, his employés must look to the property in the custody of the court and its income for their compensation. They have no claim whatever on any of the parties to the litigation. They

are the employés and servants of the court, and not of the parties. Their wages are in no sense costs of the litigation; and, although incurred during the progress of the suit, they are not incurred in the suit. They are neither expenses of the plaintiff, nor of the defendant, and are not fees or costs which can be charged against the successful party to the litigation, as is sought to be done in this case."

Without further elaboration, or further citation of authorities, we adjudge that the final orders of the Circuit Court and of the Circuit Court of Appeals, whereby the Trust Company was held liable to make good the deficiency found to exist in the funds required for the expenses of the receivership, were erroneous. Those orders must be set aside, and the petition of the receiver, so far as it seeks to impose such liability on the plaintiff, must be dismissed. To that end the decree is reversed and the cause remanded for such proceedings as will be consistent with this opinion and be in conformity with law.

*Reversed.*

MR. JUSTICE McKENNA did not sit in this case.