In re METALS EXTRACTION & REFINING CO.

STERN v. AMERICAN TRUST & SAVINGS BANK et al.

CLARK v. SAME.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1911. Rehearing Denied April 10, 1912.)

No. 1,707.

1. BANKRUPTCY (§ 113*)—EXPENSES OF RECEIVER IN EXCESS OF AMOUNT COLLECTED BY HIM—LIABILITY OF PETITIONING CREDITOR.

The provision in Bankruptcy Act July 1, 1898, c. 541, § 3e, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), that when a petition is filed by one to have another adjudged a bankrupt, and an application is made to take charge of the property of the bankrupt pending a hearing on the petition, the petitioner shall file a bond conditioned for the payment, in case of the dismissal of the petition, of the costs and expenses occasioned by the taking and detention of the property, protect a receiver in bankruptcy for his outlay in excess of the amount collected by him, but it is only in cases where the proceedings, resulting in a receivership, were instituted improvidently or without reasonable cause or without good faith or the like, that the petitioning creditor is liable for the payment of the excess of the cost of the receivership over the assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 150; Dec. Dig. § 113.*]

2. BANKRUPTCY (§ 113*)—EXPENSES OF RECEIVER IN EXCESS OF AMOUNT COLLECTED BY HIM—LIABILITY OF PETITIONING CREDITOR.

A creditor, who in good faith instituted a bankruptcy proceeding against a debtor whose property consisted chiefly of a manufacturing plant composed of machinery and fixtures which had been within four months mortgaged for an indebtedness much less than the value of the property, did not act improvidently and was not liable for the receiver's outlay in excess of the amount collected by him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 150; Dec. Dig. § 113.*]

3. BANKRUPTCY (§ 255*)—TRUSTEES—LIABILITY.

Where a landlord, on his tenant being adjudged a bankrupt, began negotiations for a new tenant and closed a contract with a new tenant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

who was ready to take possession at once, inquired of the receiver of the bankrupt whether he would be responsible for rent or whether he would surrender the possession speedily, and the receiver replied that his liability for rent commenced on the date of his appointment, but that he could not give any definite information as to when he would vacate the premises, and the landlord made repeated inquiries of the receiver who became the trustee, as to when possession would be surrendered, but could obtain no definite answer, the trustee was liable to the landlord for rent whether he had funds in his hands to reimburse himself or not.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 352; Dec. Dig. § 255.*]

Petition for Revision of Proceedings in the District Court of the United States for the Northern District of Illinois.

In the matter of the Metals Extraction & Refining Company, a bankrupt. Petition by Harris Stern and cross-petition by John M. Clark to review an order directing Harris Stern to pay a specified amount to the trustee and ordering the trustee to pay the claim of cross-petitioner out of funds in his hands. Reversed in part and modified in part.

On the 29th day of April, 1910, the District Court of the United States for the Northern District of Illinois, Eastern Division, entered the following order in said cause, viz.:

"This matter having come on to be heard upon the report of Sidney C. Eastman, referee in bankruptcy herein, and the court being fully advised in the premises, it is therefore ordered, adjudged, and decreed that H. Stern, the petitioning creditor in the above-entitled cause, be and he is hereby ordered to pay to the American Trust & Savings Bank, trustee, in the above-entitled cause, the sum of $700.55 within 10 days from this date. It is further ordered, adjudged, and decreed that the claim of John M. Clark in the above-entitled cause for rent of the premises formerly occupied by said bankrupt in the sum of $523.35, be and the same is hereby allowed, and the said trustee is authorized and directed to pay the sum out of the funds in his hands. It is further ordered, adjudged, and decreed that the report of the Honorable Sidney C. Eastman, referee in bankruptcy herein, filed in this matter on the 23d day of April, 1910, be and the same is hereby approved and affirmed."

Thereupon the said Harris Stern brought his petition here to review and revise so much of said order as directs him to pay the said sum of $700.55.

To this petition, John M. Clark, one of the respondents thereto, duly filed his cross-petition to review and revise so much of said order as authorizes and directs the trustee to pay the sum found to be due to him "out of the funds in his hands." To both of these petitions the respondent, the American Trust & Savings Bank, trustee, has duly made answer. No question is raised as to the right of the cross-petitioner to have his said demand paid as a part of the expenses of administration of said bankrupt estate.

From the record it appears that the Metals Extraction & Refining Company was duly declared a bankrupt on the petition of said Harris Stern on or about December 12, 1908. On the same day, the American Trust & Savings Bank was appointed receiver and took possession of said estate, and afterwards in due course was chosen trustee thereof. The property of the bankrupt consisted mainly of a certain manufacturing plant composed of machinery, fixtures, etc., which had been on November 10, 1908, and within four months from the time the petition in bankruptcy was filed, mortgaged to one Frank Gottstein for an alleged indebtedness of $4,000. The mortgagee filed his petition to have the property turned over to him, to which petition the trustee made answer and vigorous defense. On hearing, the court on May 7, 1909, directed the trustee to turn the property covered by the mortgage over to Gottstein. No claim was made attacking the validity and bona fides of the proceedings resulting in the appointment of the receiver and trustee. It seems to have been done with a view to the setting aside of the mortgage lien, as being void against the rights of creditors.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Moreover, the mortgaged property was valued at a sum largely in excess of the mortgage, and was in fact appraised at a sum much greater than the mortgage indebtedness. For reasons not here in question, the result of the litigation was such that the trustee found itself under a deficit amounting to the sum of $700.55. On the issuance of a rule, at the instance of the trustee, to show cause before the referee as special master why he should not be required to make good said sum, said Stern made answer setting out, among other matters, his good faith in filing the original petition. The special master made report to the court in part as follows, viz.:

"It seems to me there has been considerable carelessness, and an absence of consideration shown in this matter. * * * It seems to me that the trustee is liable for this loss, most of which could have been prevented by proper application to the court. It is very probable that negotiations could have been entered into with the mortgagee for the storing of the property, or some arrangement could have been made whereby these expenses could have been saved. However, it was not done, and I see no other way to adjust the matter than to order the trustee to pay the account."

On the coming in of the special master's said first report, the District Court referred the same back to him "to ascertain whether or not the petitioning creditor should be held for said amount in lieu of the trustee." With that direction in mind, the special master made new findings of fact, as well as of law from the same record. He reported that the trustee retained the same counsel as were employed by the petitioning creditor and the receiver; that it was the opinion of the petitioning creditor that the mortgage, having been given within the four months' period, could be set aside; that he filed his original petition with that in view; and that the trustee, being thereto advised by its attorneys, and believing that there would be, in any event, enough to pay all costs and other expenses of the proceeding, made answer to the petition of the mortgagee to have the mortgaged property turned over to him, based on statements furnished by the petitioning creditor, with the result that the same was ordered to be turned over to the mortgagee, subject to the payment of the sum of $200 toward the expenses of the trustee.

The special master thereupon found and reported to the court that the petitioning creditor was the moving cause in the premises, and that, having made use of the bankruptcy proceedings to accomplish his ends, he should be held liable for all resulting deficiencies, and that:

"The law makes him" (the petitioning creditor) "liable to the bankrupt for inadvisedly causing him damage. It would seem reasonable that he should also protect him."

To this report exceptions were interposed and overruled, and Stern was ordered to pay said sum of $700.55 as aforesaid. Other facts are stated in the opinion.

Jacob G. Grossberg, for petitioner.

John E. McLeish, for American Trust & Savings Bank.

Franklin E. Vaughan, for John M. Clark.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1, 2] The question now presented is: Was the conduct of the petitioning creditor such in the premises as to justify the order of the District Court requiring the petitioning creditor to pay to the American Trust & Savings Bank, trustee, the said sum of $700.55?

Section 3e of the act of 1898 reads as follows:

"Whenever a petition is filed by any person for the purpose of having another adjudged a bankrupt, and an application is made to take charge of and hold the property of the alleged bankrupt, or any part of the same, prior to the adjudication and pending a hearing on the petition, the petitioner or applicant shall file in the same court a bond with at least two good and sufficient sureties who shall reside within the jurisdiction of said court, to be approved by the court or a judge thereof, in such sum as the court shall

direct, conditioned for the payment, in case such petition is dismissed, to the respondent, his or her personal representatives, all costs, expenses, and damages occasioned by such seizure, taking, and detention of the property of the alleged bankrupt. If such petition be dismissed by the court or withdrawn by the petitioner, the respondent or respondents shall be allowed all costs, counsel fees, expenses, and damages occasioned by such seizure, taking, or detention of such property. Counsel fees, costs, expenses, and damages shall be fixed and allowed by the court, and paid by the obligors in such bond."

This seems to be the only provision of the act providing for the protection of a receiver for his outlay in excess of the amount collected by him.

In Atlantic Trust Company v. Chapman, etc., 208 U. S. 360, 28 Sup. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155, it is held that the receiver is the arm, and subject only to the control of the court; that the parties are without power to direct him; that "the court in the exercise of a sound judicial discretion, and looking to the interests of all who might be affected by its action, could, at the outset, have made it a condition of the appointment of a receiver that the plaintiff and those whom it represented should be liable for any deficiency in the funds required for the expenses of the receivership." In the same case it is further said:

"It is true that cases are cited in which the party bringing a suit, in which a receiver is appointed, has been held liable for expenses incurred by the receiver in excess of the processes arising from the sale of the property. But in most, if not in all, of those cases the circumstances were peculiar and were such as to make it right and equitable, in the opinion of the court, that that should be done"

—citing Ephraim v. Pacific Bank, 129 Cal. 589, 62 Pac. 177, where the court held that if the receiver—

"has taken property into his custody under an irregular, unauthorized appointment, he must look for his compensation to the parties at whose instance he was appointed, and the same rule applied if the property of which he takes possession is determined to belong to persons who are not parties to the action, and is taken from his possession by paramount authority. As to such property his appointment as receiver was unauthorized and conferred upon him no right to charge it with any expenses."

On page 375 of 208 U. S., 28 Sup. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155 of said Chapman Case, it is stated by the Supreme Court that the mere insufficiency of the property or fund to meet the expenses of a receivership does not entitle a receiver to hold the plaintiff in the suit personally liable, if all that could be said was that he instituted the suit and moved for the appointment of the receiver to take charge of the property and maintain and operate it pending the suit.

In Cutter v. Pollock, 7 N. D. 631, 76 N. W. 235, the court says:

"We do not believe that any case can be found to uphold the palpably unjust rule that one who is shown to have had no right to maintain the action, and no interest whatever in the property which he claims, can require that the defendant who had paid out of his own pocket the expenses of a receivership, shall not call upon him (the plaintiff in the action) for reimbursement."

To the same effect are High on Receivers (3d Ed.) § 796, and Beach on Receivers, § 774, and a number of other authorities having

reference to cases where the receivership was wrongfully procured in the first place.

Knickerbocker v. McKindley Co., 67 Ill. App. 291, relied on by the Dakota court, is a case in which the receiver was appointed in a suit to settle up a partnership. The partners had previously given a mortgage which was foreclosed, leaving nothing in the receiver's hands. Whereupon the court ordered the complainant, the representative of one of the partners, to pay the costs. The Illinois cases cited in support of this latter decision, i. e., Einstein et al. v. Lewis et al., 54 Ill. App. 520, and Myres v. Frankenthal et al., 55 Ill. App. 390, both deal with the appoir'ment of receivers appointed without lawful authority, and are not deemed in point.

In re Lacov, 142 Fed. 960, 74 C. C. A. 130, cited by petitioner, is not authority for the proposition claimed by petitioner. There the petition was dismissed as having been brought without cause. The foregoing authorities, we think, lay down the law with sufficient clarity that only in cases where the proceedings resulting in a receivership have been instituted improvidently or without reasonable cause, or without good faith, or the like, can the moving party be held liable for the payment of the excess of the costs of the receivership over and above the assets of the same. Here there is no claim that there was any want of good faith or care in instituting the proceedings. The mortgage was justly under suspicion, having been given within the four months' period. The value of the property covered by it was estimated to be largely in excess of the sum secured by the incumbrance. The facts of the case are such as would lead any reasonably careful person to feel justified in acting as the petitioning creditor did.

[3] The summary of debts and assets shows $4,000 secured claims and some $15,500 assets. The appraisement placed the value of the mortgaged property at $1,000 in excess of the mortgage. In the original and supplemental inventories, other property is scheduled at a valuation of something like $2,500. Neither may we overlook the fact that the special master, on his first essay to place the blame for the deficiency, lighted upon the trustee. That he afterwards, upon suggestion, changed his mind upon the same evidence, detracts little from the weight to be given his first impression. A creditor might well decline to pursue a bankrupt were he to be held, under circumstances such as are here shown, to have instituted proceedings improvidently. That part of said order which decrees that H. Stern, the petitioning creditor and petitioner herein, pay to the trustee the said sum of $700.55, is therefore vacated and held for naught. It follows that the trustee has no funds in his hands belonging to said bankrupt's estate, and therefore nothing wherewith to comply with the order of the court in the payment of the $523.35 found to be due said cross-petitioner herein. From the first report of the referee above referred to, it appears that at the time of the appointment of the receiver, inquiry was made of it by the landlord in regard to whether it would be responsible for rent and whether it would be willing to surrender the possession speedily, as the landlord was

negotiating for a new tenant, etc.  The receiver made reply on December 19, 1908, to the agents of the landlord as follows:

"Referring to yours of the 18th instant, we advise that this bank was appointed receiver in bankruptcy in the above matter on December 12th and the receiver's liability for rental commenced on that date.  We cannot give you any definite information as to when we will vacate the premises, or how much time we would require, but we assure you that we shall be pleased to do all that lies in our power to accommodate you as far as this matter is concerned."

It further appears from the petition of cross-petitioner filed with referee, upon which the said order of the referee was based, that cross-petitioner had actually closed a contract with a new tenant for said premises, who was ready and anxious to take possession at once, and that cross-petitioner's agents made repeated inquiries of the receiver and later the trustee as to when possession would be surrendered, but could get no definite answer.  As between the cross-petitioner and the trustee, the latter is, under the facts of this case, liable to the former for the amount of his said claim, whether it has funds in its hands to reimburse itself or not.  It was consequently error on the part of the District Court to limit the trustee's liability to pay said claim to the funds of the bankrupt's estate in its hands. That part of said order, therefore, which does so limit the trustee's liability, to wit, the words "out of the funds in his hands," and also that portion of said order which approves and affirms the report of the referee, in so far as the same is inconsistent with the foregoing opinion, are also vacated and held for naught.