Raymond J. DONOVAN, Secretary of
Labor, Plaintiff,

v.

Loran W. ROBBINS, et al., Defendants.

and

Raymond J. DONOVAN, Secretary of
Labor, Plaintiff,

v.

Allen M. DORFMAN, et al., Defendants.

Nos. 78 C 4075, 82 C 7951.

United States District Court,
N.D. Illinois, E.D.

July 12, 1984.

David H. Feldman, Richard O. Patterson, William Zuckerman, U.S. Dept. of Labor, Sp. Litigation Div., Washington, D.C., for plaintiff. ·

Michael J. Rovell, Linda L. Listrom, Jenner & Block, Chicago, Ill., for defendant Dorfman.

Kevin M. Forde, Chicago, Ill., for receiver.

Edward L. Foote, R. Mark McCareins, Winston & Strawn, Chicago, Ill., for defendant Amalgamated.

James L. Coghlan, Coghlan, Joyce, Nellis & Kelly, Chicago, Ill., for defendants Central States Southeast and Southwest Areas Health & Welfare Fund.

## ORDER

BUA, District Judge.

Before the Court is the issue of which party is to bear the costs of a receivership imposed upon Amalgamated Insurance Agency Services, Inc. and related compa-

nies (Amalgamated) by this Court on December 29, 1982. Additionally, Amalgamated complains that the expenses and fees of the receivership are excessive. Also pending is the motion of the Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") to have returned to it certain claims processing fees paid to Amalgamated during the receivership.

## I. HISTORY

This case first was heard in this Court pursuant to an action by the Secretary of Labor (the Secretary) filed December 29, 1982 styled *Donovan v. Dorfman.* With the filing of the case the Secretary filed a motion for a finding that case 82 C 7951 was related to case 78 C 4075 [1] pursuant to Local Rule 2.31. On that same day the Secretary also made an application for an *ex parte* temporary restraining order in cases 78 C 4075 and 82 C 7951. As the designated emergency judge, this court heard the *ex parte* application and granted the injunctive relief requested by the Secretary.[2] The terms of the order imposed a receivership on the property and assets of Allen M. Dorfman, Amalgamated Insurance Agency Systems, Inc., Federal Computer Systems, Inc., Health Plan Consultants Service, Inc., and Prescription Plan, Inc. This emergency relief was sought by the Secretary to prevent the cessation of claims processing by Amalgamated for the Fund because of a fear that Dorfman would liquidate or flee the country with his assets as a result of a recent criminal conviction.[3] The law firm of Scariano, Kula & Associates, Ltd. was appointed as receiver.

On the following day, December 30, 1982, the defendants in 82 C 7951 were

granted a hearing before this Court at which they moved to dissolve the receivership and deny the other injunctive relief granted in the temporary restraining order. After argument of counsel, this court denied the defendants' motion. At the hearing Kevin M. Forde was appointed as the receiver's attorney. A status hearing was set for January 3, 1983 before Judge Flaum.

At the January 3 status hearing the defendants again moved for dissolution of the restraining order. Judge Flaum determined that the matter should proceed on the Secretary's motion for preliminary injunction which had been filed on December 29, 1982.

The hearing on the Secretary's motion for preliminary injunction began on the morning of January 4, 1983, and continued for four full days. During the hearing over one hundred exhibits were submitted and seven witnesses testified. Judge Flaum then extended the temporary restraining order until January 18, 1983. On January 18, Judge Flaum denied the Secretary's motion for a preliminary injunction and determined that the restraining order was no longer required, 558 F.Supp. 319. To effect a smooth transition the receivership was continued until January 21, 1983.

## II.

Defendants Amalgamated and Dorfman challenge the allocation of receivership fees and expenses to Amalgamated, asserting that as Amalgamated was not benefitted by the receivership, it should not have to bear the costs involved. Other arguments advanced by the defendants are that the Court did not have the authority to grant the relief requested, and that the receiver-

---

1. *Donovan v. Robbins,* No. 78 C 4025, was originally assigned to Judge Flaum. It is currently pending before Judge Will.

2. The Court notes that the Fund joined with the Secretary in seeking the temporary restraining order and the preliminary injunction.

3. Dorfman's conviction in *United States v. Dorfman,* No. 81 CR 269, precipitated the filing of *Donovan v. Dorfman* and the issuance of the

temporary restraining order. Evidence presented in the criminal trial showed that Dorfman attempted to defraud the Fund. (Dorfman owns 50 percent of Amalgamated's stock.) Based on the information revealed at the trial, the trustees of the Fund decided to discontinue payments to Amalgamated unless a receiver was appointed. Amalgamated's total income is derived from the Fund.

ship was the result of a bad faith action by the Secretary of Labor which would require the Department of Labor to bear the costs.

■ As a general rule, the expenses and costs of a receivership are charged to the property or fund administered. *Atlantic Trust Co. v. Chapman*, 208 U.S. 360 at 375–6, 28 S.Ct. 406 at 411, 52 L.Ed. 528 (1908). It is up to the discretion of the court appointing the receiver as to who shall be charged with the costs of the receivership. *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000 at 1003 (8th Cir. 1939). Under Illinois law, the fees and expenses of a receiver incurred in administering a property are properly chargeable against the owner of the property. *In re Spicewood Assoc.*, 445 F.Supp. 564 at 570 (N.D.Ill.1977). If the plaintiff's claim is unjust or unlawful, however, it is inequitable to charge the defendant with the expenses of a receivership wrongfully imposed on it. *Feldman v. Illinois Pawners Assoc.*, 279 Ill.App. 476 (1925).

■ Defendants Amalgamated and Dorfman claim that the Secretary of Labor misled this Court as to the necessity of the restraining order and the receivership as part of a general pattern of harassment of Mr. Dorfman, et al., and that the *ex parte* hearing unjustly imposed the costs of the receivership on Amalgamated. Although the defendants were not present at the December 29, 1982 hearing which resulted in the restraining order, the defendants were heard on December 30, 1982. After due deliberation on defendants' motion to dissolve the temporary restraining order, this Court allowed the order to stand. Judge Marshall, presiding in Allen M. Dorfman's criminal case, thought the risk of flight by Mr. Dorfman to be so great that he required the posting of a substantial bond. This Court agreed that there was a real risk that Mr. Dorfman would flee rather than face incarceration. The concern of the Secretary of Labor was that prior to

fleeing Mr. Dorfman would loot the assets of Amalgamated, leaving that company unable to process the claims submitted by the beneficiaries of the Fund. The second concern was that if the Fund stopped monthly payments to Amalgamated, Amalgamated would cease processing claims. Each of those possibilities was determined by this Court to represent potential irreparable harm to the Fund and beneficiaries of the Fund. In order to avoid the possibility of that irreparable harm, the Court granted the Secretary of Labor's motion for a temporary restraining order, leaving the question of whether or not a preliminary injunction should be issued for a determination by Judge Flaum. The granting of this relief is clearly within the sound discretion of this Court. *Atlantic Trust Co. v. Chapman*, 208 U.S. 360 at 370, 28 S.Ct. 406 at 408, 52 L.Ed. 528 (1908). The fact that Judge Flaum, at a later date, declined to extend the temporary restraining order and to grant a preliminary injunction does not mean that the action taken by this Court was not warranted *at the time*.[4]

Judge Flaum, in reaching his decision, had the benefit of over 100 exhibits and extensive testimony during four days of hearings. He was also able to rely on the reports of the receiver in his decision. In ruling that the appointment of the temporary receiver was no longer necessary, Judge Flaum found that, based on the extensive evidence presented, irreparable harm to the Fund participants and beneficiaries was not imminent. He decided that, having posted a substantial bond, and given the ownership interests of many of Mr. Dorfman's relatives in Amalgamated and related companies, it was unlikely Mr. Dorfman would take any drastic actions. Relying on the assurances of Amalgamated's counsel, Judge Flaum also concluded that Amalgamated would not stop processing claims if it did not receive a monthly payment from the Fund.

---

4. Judge Flaum himself, in his decision, noted that the situation had changed since December

29, 1982, when the restraining order was issued.

■ The changed conditions from December 29, 1982 to January 18, 1983, extensive testimony and numerous exhibits, and the interim reports of the receiver, all allowed Judge Flaum to determine that the continuation of the receivership was no longer necessary, and that a preliminary injunction was not required. Nothing presented in the four-day hearing before Judge Flaum, or in the subsequent appeals of his order, showed that the Secretary of Labor or the Central States Fund acted maliciously, in bad faith, or without a reasonable belief in their application for a temporary restraining order or for a preliminary injunction. On the contrary, the Secretary presented evidence of well-grounded fears that Amalgamated would cease processing benefit payments for members of the Fund. It was the assurances of Amalgamated that it would not do so, which were substantiated in an extensive hearing, that led to cessation of the need for a receiver.[5] The receiver having been appointed on a good faith application upon a showing of a probability of irreparable harm, this Court will follow established case law and charge the fees and costs of the receivership against the property administered. *Atlantic Trust Co. v. Chapman*, 208 U.S. 360 at 375–6, 28 S.Ct. 406 at 411, 52 L.Ed. 528 (1908); *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000 at 1002 (8th Cir.1939).

## III. REASONABLENESS OF THE RECEIVER'S FEES AND EXPENSES

Amalgamated and Dorfman have objected to the reasonableness of the receiver's fees and the expenses that the receiver incurred in administering Amalgamated and the related companies. Their objections are based on three grounds: 1) that the services provided were not necessary; 2) that the hourly rates charged are excessive; and 3) that in order to be entitled to

their fees, the receiver must have increased the value of the property.

■ The Services that are challenged—accounting, Security, and insurance analysis—are services that were required either directly or indirectly by the order imposing the receivership. The retention of the outside accounting firm and the insurance consultant was a proper discharge of the receiver's responsibilities in these areas. The invoices of the U.S. Marshal's Service and the accounting firm were presented in open court for payment, and approved by the Court. The necessity of all these services was apparent to the Court at that time, and the receiver's actions were sanctioned by the Court. Defendants' objection to these costs is totally without merit.

■ Amalgamated and Dorfman contend that the receiver's right to compensation is contingent on the value conferred on Amalgamated's and Dorfman's assets. The United States Supreme Court has held that compensation for a receiver is to be determined by the circumstances of the particular case, and that factors to be considered are the degree of responsibility and business ability of the receiver. *Stuart v. Boulware*, 133 U.S. 78, 82, 10 S.Ct. 242, 243, 33 L.Ed. 568 (1890). Other courts have concurred that a reasonable fee is based on all circumstances surrounding the receivership. *In re Westec Corp.*, 313 F.Supp. 1296, 1302 (S.D.Tex.1970); *In re Yuba Consolidated Industries, Inc.*, 260 F.Supp. 930, 939 (N.D.Cal.1966). Results achieved by the receiver, however, are always relevant. *S.E.C. v. W.L. Moody & Co.*, 374 F.Supp. 465 at 480 (S.D.Texas 1974). In the instant case the receiver was appointed to preserve the claims-processing ability of Amalgamated and did so, preventing potential irreparable harm to the members and beneficiaries of the Central States Fund. To achieve this result, the receiver and his attorneys spent a great

---

**5.** Indeed, by agreement between Amalgamated and the Fund, the receivership was continued from January 26 until January 28, 1983, after being continued to January 26 by order of Judge Flaum. By subsequent agreement between Amalgamated and the Fund, the receivership was again continued over certain assets of Amalgamated until January 31, 1983, at which time the Fund purchased the claims processing assets of Amalgamated.

number of hours in a short period of time stabilizing a potentially volatile situation. It was only the appointment of the receiver that induced the Fund to make its next payment of almost $800,000 to Amalgamated. Without this payment Amalgamated would have been sorely pressed for funds. The receiver also convinced Amalgamated's bank to continue a $500,000 loan to Amalgamated. It was the appointment of the receiver and the efforts expended by the receiver during its tenure that allowed Amalgamated and the Central States Fund the time necessary to reach an agreement on the sale of certain assets to the Fund. Therefore, although the receiver may not have increased the value of the property administered, the receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts.

■ The final challenge of the defendants is to the reasonableness of the hourly rates charged by the receiver and his attorney. The Court does not agree with the defendants' contention the hourly fees requested are "astronomical"; in fact many of the fees requested are lower than those customarily charged by defendants' counsel. *The National Law J.*, Feb. 27, 1984, at 27. The Court does find, however, that the fees charged are higher than warranted. *See, Rybicki v. The State Board of Election Commissioners*, 584 F.Supp. 849 (N.D.Ill.1984). Accordingly, although this Court reiterates its total satisfaction with results achieved by the receiver and receiver's counsel, the hourly rates allowed are reduced as follows:

Anthony Scariano—from $150 to $120/hour

Anthony G. Scariano—from $125 to $100/hour

David P. Kula—from $125 to $100/hour

Robert H. Ellch—from $100 to $75/hour

Alan T. Sraga—from $100 to $75/hour

Thomas J. Canna—from $75 to $60/hour

Justino D. Petrarca—from $75 to $60/hour

This results in the reduction of the receiver's fee from $61,865 to $49,865. The fees charged by receiver's counsel are to be limited as follows:

William J. Harte—from $165 to $130/hour

Kevin M. Forde—from $165 to $130/hour

Associates—from $100 to $70/hour

This reduces receiver's counsel's fee for their efforts until and through January 28, 1983 from $38,756.75 to $29,512.50.

### IV.

The Fund has moved for reimbursement of overpayments in the amount of $18,822.09 it paid the receiver in connection with claims processing services rendered by Amalgamated between July, 1982 and January, 1983. In response, Amalgamated has asked that the Court stay any proceedings on the Fund's motion pending resolution of Amalgamated's $2,000,000 claim against the Fund seeking payment for the processing of certain Fund members' claims. Amalgamated contends that the Fund's motion is a cross-claim brought under Fed.R.Civ.P. 13(g) involving the identical transaction or occurrence and that granting the Fund's motion would merely offset any liability found under Amalgamated's claim.

■ Rule 13(g) was intended to promote the expeditious and economical adjudication of an entire subject matter arising from the same set of facts within a single action. *Providential Development Co. v. United States Steel Co.*, 236 F.2d 277, 281 (10th Cir.1956). It follows that cross-claims filed under Rule 13(g) should be considered at the same time so as to do justice to the rationale behind the rule.

■ In the instant case, the claims of both Amalgamated and the Fund arise out of Amalgamated's processing of claims for the Fund and relate to the fees paid Amalgamated. As a decision on the claim of the Fund would merely offset any successful claims of Amalgamated in this regard and would involve duplication of numerous issues and evidence, judicial economy re-

quires that the issues be considered as one. Therefore, Amalgamated's Motion for Stay is granted.

## CONCLUSION

In accordance with the foregoing, the Court directs that the following actions be taken: 1) the costs, expenses and fees of the receivership are to be paid by the defendants, Amalgamated Insurance Agency Services, Inc., et al.; 2) the fee owed to the receiver is reduced to $49,865 and to receiver's counsel to $29,512.50; 3) the motion to stay a ruling by this Court on Amalgamated's claim for reimbursement by the Fund is granted.

IT IS SO ORDERED.