[L. A. No. 935.   Department One.—November 29, 1902.]

## CITY OF LOS ANGELES, Respondent, v. LOS ANGELES CITY WATER COMPANY, Appellant. F. A. GIBSON, Receiver, Respondent. ALEXANDER CALDWELL, County Assessor, Respondent.

TAXATION—FUNDS IN HANDS OF RECEIVER—POWER OF COURT.—Under section 3647 of the Political Code, the court is authorized to ascertain the amount of taxes to be paid on funds and solvent credits in the hands of a receiver, and to order that the tax be paid by the receiver.

ID.—INFORMALITY OF ASSESSMENT.—Under section 3885 of the Political Code the validity of said taxes is not affected by any informality of the original assessment.

ID.—RECEIVER OF PROPERTY OF WATER COMPANY—SOLVENT CREDITS—OFFSET OF INDEBTEDNESS—QUESTION OF FACT.—Where the receiver was appointed to take charge of the operations of a water company, and the ordinary current expenses were paid by the receiver, and the indebtedness of the water company was not increased by the appointment of the receiver, the question whether the water company was indebted to residents of the state, and was entitled to offset such indebtedness against solvent credits under the control of the receiver, was a question of fact to be decided by the court.

ID.—MONEY AND PROPERTY IN LITIGATION—OWNERSHIP—CONSTRUCTION OF CODE—BURDEN OF TAX.—In cases provided for in section 3647 of the Political Code the right to tax ''money and property in litigation'' does not depend upon the ownership thereof, nor the final result of the litigation. But where the property belongs to the defendant, and has been turned over to it, leaving only in the hands of the receiver enough to pay the tax, the burden thereof must rest upon the defendant as the owner of the property assessed.

APPEAL from an order of the Superior Court of Los Angeles County directing a receiver to pay taxes. John L. Campbell, Judge.

The facts are stated in the opinion.

John Garber, White & Monroe, and J. S. Chapman, for Appellant.

W. F. Haas, City Attorney, and Lee & Scott, for City of Los Angeles, Respondent.

James C. Rives, District Attorney, and Curtis D. Wilbur, Chief Deputy, for County Assessor, Respondent.

Graves, O'Melveny & Shankland, for Receiver, Respondent.

THE COURT.—This case was before this court upon a former appeal from an order appointing a receiver, and is reported in 124 Cal. at page 368. Upon that appeal the order appointing the receiver was reversed. Upon the present record several appeals were taken, but all have been settled and dismissed, except an appeal taken by the defendant from an order directing the receiver to pay to the assessor of the county of Los Angeles the sum of $1,845.22, the tax claimed to have been levied and assessed upon moneys and solvent credits in the hands of the receiver on the first Monday in March, 1899.

The order appointing Gibson as receiver of the water company was reversed May 5, 1899, and the *remittitur* was filed in the court below on July 7th. On June 7th, in reply to a letter from the county assessor demanding a statement of the taxable property in his hands, the receiver wrote that on the first Monday of March he had, as receiver, solvent credits amounting to $138,400.11, less debts due residents of the state, $757.97, leaving balance of $137,642.14, and cash collections received that day (March 6th, noon), say $749.55, and further said: "I am unable to say whether said property is subject to taxation, and have applied to said superior court (Department 2) for instructions as to my duty in the premises. Upon entry of its order I shall act in accordance therewith." The assessor thereupon, in the column headed "Description of Property in the City of Los Angeles," made the following written statement: "Solvent credits, $138,-400.11, less amounts due residents of the state, $757.97. Taxable balance solvent credits, $137,642.14. Money on hand, $749.55." And in the column headed "Amount of Money and Solvent Credits," he entered "$138,391.69."

It is contended that this assessment consisted only of the name of the receiver and a copy of his letter. That it was defective in form may be conceded, but the correctness of the figures is not questioned. The assessor, however, with the written consent of the district attorney, corrected the errors

and defects in form under the provisions of section 3881 of the Political Code, but no change was made in the facts and figures stated in the receiver's letter. Section 3885 of the same code provides: "No assessment or act relating to assessment or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law." It is argued, however, that there was no assessment in existence to be corrected. The letter written by the receiver in reply to the written demand of the assessor (in which was stated all the facts necessary to constitute an assessment) was clearly intended as an assessment, conditioned only upon the decision of the court that the property was taxable in his hands as receiver. No change was made in the amounts of either of the several sums stated, either by the assessor or the board of equalization, or by the court.

The receiver promptly petitioned the court for its direction in the premises, and afterwards the assessor presented a like petition, and a hearing was had thereon.

Upon said hearing the affidavit of J. C. Drake, a director and auditor of the water company, was read, in which it was stated, in substance, that an application had been made to the board of supervisors to order the assessor to discontinue proceedings in the matter of the collection of said taxes, and that said application had been continued to July 18th; that said tax was unjust; that the money in the hands of the receiver was, in truth, a debt due to the water company; that the order appointing the receiver had been reversed, the receiver having been wrongfully appointed; that during the time the receiver had been collecting the revenues of the company it had been borrowing money to provide for its ordinary expenses and to pay such debts and claims as had to be paid; that if the money collected by the receiver had been collected by the company, said money would not have been on hand on the first Monday in March, but would have been paid out in the discharge of necessary operating expenses and upon the debts of the company, the amount of which, to *bona fide* residents of the state, exceeded said sum in the hands of the receiver; and that its indebtedness was more than an offset to the whole of that sum.

The order appointing the receiver provided, among other

things, "that all actual and necessary costs and expenses of maintaining and operating said water-works system, to be ascertained and determined by the order of this court or by stipulation of the parties hereto, be paid by the receiver, from time to time, as directed by this court, or as consented to by the stipulation of the parties." The final report of the receiver shows the net collections to have been $336,631.65, and the disbursements in payment of vouchers Nos. 1-651 to have been $105,505.56. It would therefore appear that the ordinary current expenses were paid by the receiver, and that the company did not "borrow money to provide for its ordinary expenses," but that the actual and necessary costs and expenses of "maintaining and operating" said system of water-works were paid by the receiver, and that the indebtedness of the water company, if any it had, was not increased by the appointment of the receiver. No indebtedness of the water company to any resident of this state was specified, and whether it was so indebted was a question of fact to be decided by the court. Section 3647 of the Political Code provides: "Money and property in litigation in possession of a county treasurer, of a court, county clerk, or receiver, must be assessed to such treasurer, clerk, or receiver, and the taxes be paid thereon under the direction of the court." Under this section of the code the court was authorized to ascertain the amount of taxes to be paid, and to order that the tax be paid by the receiver, he being in possession of the fund; and the validity of such tax is not affected by the informality of the original assessment. (Pol. Code, sec. 3885.) In each of the cases provided for in section 3647 of the Political Code the right to tax "money and property in litigation" does not depend upon the ownership of the money or property, nor the final result of the litigation, though the ultimate liability of the parties may depend, as between themselves, upon proceedings had after the payment of the tax. Here, however, pursuant to the judgment of this court upon the former appeal, the fund in the hands of the receiver was restored to the defendant, except a sum sufficient to pay the tax thereon demanded by the county assessor. The effect of said judgment of reversal was a denial of the asserted right of the plaintiff to said fund, nor was said fund in the possession of the plaintiff, nor was any benefit derived by the plain-

tiff therefrom. In all other cases than that of "property in litigation," the right of taxation attaches only to ownership or possession of the property taxed, or of some relation thereto specified in the statute. The legal liability for the payment of the tax must therefore rest upon the defendant, the owner of the property assessed.

The order appealed from is affirmed.