SPRING VALLEY WATER CO. v. CITY AND COUNTY OF SAN FRANCISCO et al.

(Circuit Court of Appeals, Ninth Circuit. August 23, 1915.)

Nos. 2543, 2547-2559.

1. TAXATION ⊙⇒87—PROPERTY SUBJECT TO TAXATION—PROPERTY IN POSSESSION OF COURT—"RECEIVER."

Where, in suits by a water company to enjoin the enforcement of water rates fixed by county supervisors, preliminary injunctions were issued on condition that the company should deposit in banks the difference between the rates fixed and those actually collected, to remain until the final outcome of the litigation, and the water company made the deposits directed, the deposits were taxable under Pol. Code Cal. § 3647, providing that money in litigation in possession of the court or a receiver must be

assessed and the taxes paid thereon under the direction of the court, for the banks receiving the deposits were receivers; a "receiver" being an indifferent person between the parties, appointed by the court to receive property pending suit, and to hold possession and dispose of the same as the court may direct.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 177; Dec. Dig. ☞87.

For other definitions, see Words and Phrases, First and Second Series, Receiver.]

2. RECEIVERS ☞153—DIRECTION TO PAY TAXES.

Where assessments on money in the possession of banks as receivers of the court were regular, the court could direct the banks to pay the taxes.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 276, 277; Dec. Dig. ☞153.]

3. TAXATION ☞420—ASSESSMENTS—VALIDITY.

Where the records of the court and the accounts kept by different banks, receiving deposits pending suits pursuant to order of the court, showed the particular funds involved and to what suits they are referable, error in assessments going to a misdescription of the funds, or to an unwarranted commingling thereof, by the taxing officers, did not render the assessments invalid, for the question as to what part of the funds was referable to a given suit was a mere matter of account and detail for the court officers.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 711, 712, 715, 717–719; Dec. Dig. ☞420.]

4. RECEIVERS ☞151—ASSESSMENTS—ENFORCEMENT—ORDERS OF COURT.

Where the records of the court and the accounts kept by depositories, receiving money pursuant to order of court in pending suits, showed the particular funds involved in each suit, orders of the court directing payment of the taxes were not erroneous, because they did not specify what amounts should be paid out of the moneys on deposit in each suit.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 269–271; Dec. Dig. ☞151.]

5. TAXATION ☞418—ASSESSMENTS—VALIDITY.

Where money was deposited with a bank under order of court in a pending suit, an assessment of the money was not vitiated because it was assessed to the bank as receiver.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 707–710; Dec. Dig. ☞418.]

6. TAXATION ☞126—BANKS—CONSTITUTIONAL PROVISIONS.

An assessment on deposits in a bank, made pursuant to order of court in pending suits, is not an assessment against the bank or its shares or other property, within Const. Cal. art. 13, § 14, providing for the taxation of the stock of banks, but is an assessment against funds in the hands of the bank, acting as receiver.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 228, 229; Dec. Dig. ☞126.

Taxation of bank deposits, see note to Pyle v. Brenneman, 60 C. C. A. 413.]

Appeal from the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Suits by the Spring Valley Water Company against the City and County of San Francisco and another. From orders directing depositories to pay taxes levied thereon, plaintiff appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In June, 1908, the appellant, as complainant, instituted a suit in the court below against the city and county of San Francisco and the board of supervisors thereof, to enjoin the enforcement, during the years 1908–09, of certain water rates fixed by the board. The cause was numbered 14735. Similar suits with reference to the rates for subsequent fiscal years were thereafter instituted in 1909, 1910, 1911, 1912, and 1913. These causes are numbered respectively 14892, 15131, 15344, 15569, and 26. In suits numbered 14735, 15569, and 26 preliminary injunctions were issued upon condition that complainant should deposit in some bank or banks, to be agreed upon by the parties, the difference between the rates fixed by the municipal authorities and those actually collected by complainant; such excess to continue on deposit until final outcome of the suits. It was further provided that such deposits should be subject to the order of the court, and should be paid out only on the checks of a special master, countersigned by a federal judge. A special master was appointed, and directed to ascertain and report the amounts collected from each individual consumer. Subsequently the Mercantile Trust Company, of San Francisco, was designated as a depository for the impounded moneys, the order directing that such deposits be carried under an account entitled "Spring Valley Water Company—Special Account," and subject to the order of the court, as previously declared. In suits numbered 14892 and 15131 the procedure was the same, with the exception that complainant proceeded to deposit the moneys with the Mercantile Trust Company without any specific order designating the depository. In suit numbered 15344 the restraining order made no provision for impounding the excess moneys, but it was subsequently stipulated that, so long as the order continued in force, the moneys collected should be deposited with the Mercantile Trust Company, and should be repaid as the final disposition of the cause might require. In this case a deputy clerk of the court was appointed special master. Deposits were made from time to time in pursuance of the order of the court. Subsequently portions of the amounts deposited were transferred, also by direction of the court, from time to time to other depositories, namely, Wells Fargo Nevada National Bank of San Francisco, Mercantile National Bank of San Francisco, the Crocker National Bank of San Francisco, Bank of California, National Association, Union Trust Company of San Francisco, and the Anglo and London Paris National Bank. The moneys found on deposit in each of these depositories on the first Monday of March, 1913, and the first Monday of March, 1914, were assessed for those years. In each assessment the designated bank or depository was described as "receiver of impounded moneys," and further as "receiver or depository under order of court of the impounded moneys in equity suits numbered 14275, 14735, 14892, 15131, 15569, 15344, and 26, District Court of the United States, wherein the Spring Valley Water Company is plaintiff and City and County of San Francisco et al., defendants." On motion, the court directed the depositories to pay the taxes levied. There are 14 of these orders, and an appeal is prosecuted from each order. The appeals on the docket here are numbered 2543 and 2547 to 2559, inclusive. Each of the banks acting as a depository has paid the 1 per cent. tax assessed against it for the fiscal years 1913–14 and 1914–15, under the provisions of article 13, § 14, of the Constitution of the state of California.

Edward J. McCutchen and A. Crawford Greene, both of San Francisco, Cal., for appellant.

Percy V. Long, City Atty., and Robert M. Searls, Asst. City Atty., both of San Francisco, Cal., for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] It is urged that there was no legal authority for the assessments, or for making them in the manner in which they were made. Reliance·

is placed by the respondent upon section 3647 of the Political Code of California, under which it is claimed the assessments were regularly and rightfully made, which reads as follows:

"Money and property in litigation in possession of a county treasurer, of a court, county clerk, or receiver, must be assessed to such treasurer, clerk, or receiver, and the taxes be paid thereon under the direction of the court."

The question turns largely upon whether the banks in which the moneys were directed to be deposited were receivers within the meaning of the section of the statute just quoted. The Supreme Court of the United States has defined a receiver thus:

"A receiver is an indifferent person between parties, appointed by the court to receive the rents, issues, or profits of land, or other thing in question in this court, pending the suit, where it does not seem reasonable to the court that either party should do it." Booth v. Clark, 17 How. 322, 331, 15 L. Ed. 164.

In Atlantic Trust Co. v. Chapman, 208 U. S. 360, 371, 28 Sup. Ct. 406, 409, 52 L. Ed. 528, 13 Ann. Cas. 1155, the court continues:

"He is an officer of the court; his appointment is provisional. He is appointed in behalf of all parties, and not of the complainant or of the defendant only. He is appointed for the benefit of all parties who may establish rights in the cause. The money in his hands is in custodia legis for whoever can make out a title to it. Delaney v. Mansfield, 1 Hogan, 234. It is the court itself which has the care of the property in dispute. The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court."

A comprehensive definition is to be found in 34 Cyc. 15:

"A receiver is an indifferent person between the parties, appointed by the court, and on behalf of all parties, and not of the complainant or defendant only, to receive and hold the thing or property in litigation, pending the suit, to receive the rents, issues, or profits of land, or other thing in question, to receive rents or other income, and to pay ascertained outgoings, when it does not seem reasonable to the court that either party should hold it, to hold possession and control of property which is the subject-matter of litigation, and to dispose of the same or deliver it to such person or persons as may be directed by the court. He is said to be the arm and the hand of the court, a part of the machinery of the court, by which the rights of parties are protected."

Now, the direction of the statute, so far as it could have application here, is that money in litigation in possession of a court must be assessed to the receiver. The money impounded constitutes the very essence of the controversy. It is the very thing about which the parties are not agreed respecting title and right of possession; hence the suit, and hence the litigation to determine their rights respecting it. The money, therefore, may be properly said to be in litigation. Further, it is also in possession of the court. It is recited that one of the conditions of the preliminary injunction is that the complainant should deposit the money in some bank or banks to be agreed upon by the parties, to continue on deposit until the final outcome of the action. And it was further provided that the deposit—that is, the money—should be subject to the order of the court, and should be paid out

only on checks drawn by a special master and countersigned by a federal judge. The special master is an officer of the court. Could the money be any more completely under the control, and therefore in the possession, of the court? The answer is obvious.

Now, what was the office and function of the banks? It was to hold the money subject to the order of the court. Such is the express provision of the injunctive process. The court has seized the money in the first instance through its injunctive process, has taken it away from the parties and possessed itself thereof, and has ordered it put in the banks, as custodians, to abide its orders. Thus it would seem, not only that the funds are in custodia legis, but that the banks themselves have become receivers of the funds. By whose authority did they become such receivers? Not by the authority of the parties, though with their consent, but by the authority of the court. This makes them receivers of the court, and there can be no other reasonable solution of the problem. Whether they be called depositories, or receivers, or what not, their legal position is that of receivers of money or funds in the possession of the court.

[2] The banks were primarily assessed as receivers of impounded moneys. Later a correction was made whereby they were designated as "receiver or depository under order of court of the impounded moneys in equity suits," giving the numbers of the suits, the court in which they were pending, and their titles. The banks being receivers of the court, the money on deposit with them under the order and direction of the court was properly assessable to them as such receivers, and the assessments, we think, were regular, and legally made. The assessments being regular, the court was authorized to direct the receivers to pay the taxes levied. Los Angeles v. Los Angeles City Water Co., 137 Cal. 699, 70 Pac. 770.

As it pertains to actions numbered 14892, 15131, and 15344, the money was potentially in the possession of the court, and the receivers of such moneys were properly assessable on them.

[3] Another objection to the validity of the assessments is that the description is of "impounded moneys in equity suits numbered 14275, 14735, 14892, 15131, 15569, 15344, and 26," while, as a matter of fact, no moneys whatever were ever impounded in suit No. 14275, and none in suit No. 26, assessed for the year 1913–14, and, further, that the different funds pertaining to each suit were not separately assessed.

The first part of the objection goes to a misdescription of the funds, and the last to an alleged unwarranted commingling thereof by the taxing officers. But this relates to a matter of detail only, as the records of the court and the accounts kept by the different depositories, we assume, will show the particular funds involved and to what suits they are referable, so that there need be no confusion on that score. The assessment is really of a fund in custodia legis to the receiver, an officer of the court, and the question as to what portion of the fund is referable to a given suit is a mere matter of account and detail for the court officers, and not for the assessor and the taxing officers. The fund is chargeable with the tax, and the depository is entitled to credit for it when paid. When the ownership is determined and settled,

the distribution of the fund, diminished by the amount of the tax, will follow, into whosesoever hands it may finally go.

[4] This is decisive of a kindred objection, namely, that:

"The orders of the court * * * were erroneous, in that they directed that one sum should be paid by each bank on account of the tax assessed for each year, and did not specify or determine what amounts should be paid out of the moneys on deposit in each respective action."

The point made is but illustrative of the distinction we draw respecting the detail of accounting as applied to the fund assessed, and the officers upon whom the duty pertaining thereto devolves. The court's orders follow the assessments, and are not a part of them. Independently thereof, the court's orders can create no confusion, as the records of the court and the accounts of the depositories will undoubtedly show the particular moneys involved in each proceeding.

[5] Still another objection, which seems persuasive at first blush, is that, in the case of the Mercantile Trust Company, the moneys on deposit were assessed to the Mercantile National Bank, as receiver, etc., an error attributable to the bank in reporting to the assessor the name of the depository having custody of the funds. But we think, considering that it was the fund that was assessable to the receiver, an officer of the court having its custody, the error was clerical, rather than substantial, and did not vitiate the assessment.

[6] It is another contention of appellant that, as it is provided relative to banks that there shall be levied upon the shares of the capital stock of such institutions an annual tax payable to the state of 1 per centum upon the value thereof, which tax shall be in lieu of all other taxes and licenses—state, county, and municipal—upon such shares of stock and upon the property of such banks, with certain exceptions not material here (citing article 13, § 14, of the Constitution of California), there was no authority for assessment of these moneys in the hands of the bank.

The plain answer to this is that the assessment here was not against the bank, or its shares of stock, or other property of the bank, but against funds in the hands of a receiver of the court, the bank acting as such receiver. Indeed, the assessment against the funds does not affect the bank in any way, either to increase or to diminish its burdens under the taxing laws, and is not in the least inimical to the clause of the Constitution cited.

The orders of the court appealed from will therefore be affirmed, with costs in each case to the appellees.