149 CLINTON AVENUE NORTH, INC. et al., Appellants, v INIS F. GRASSI, Respondent, et al., Defendants.

Fourth Department, April 15, 1976

*Stull, Stull & Brody (Robert Stull* of counsel), for appellants.

*Liebschutz, Sutton, DeLeeuw, Clark & Lewis (John J. Darcy* of counsel), for respondent.

CARDAMONE, J. We are called upon principally to decide whether a court-appointed Receiver who has obtained an order of discharge may, nonetheless, be held liable to answer officially and/or individually, for his actions in permitting fire insurance on the receivership property to lapse so that, when the mortgaged building burned, plaintiffs, owner and lessee, suffered the loss of their interest in the property. We believe that this question should be answered in the affirmative.

Plaintiffs, 149 Clinton Avenue North, Inc. and Hotel Claridge, Inc., were respectively the owner and lessee of a certain building and land in the City of Rochester consisting of a hotel and several commercial stores. Defendant, First National Bank of Rochester (Bank) held a recorded first mortgage on the premises in the amount of $150,000. As a consequence of the alleged default on November 10, 1971 by plaintiff mortgagor the Bank commenced a foreclosure action in Supreme Court. In the foreclosure proceeding the Bank was represented by defendant law firm, Johnson, Reif & Mullan. Defendant Grassi was appointed on November 22, 1971 to act as Receiver of the rents, issues and profits of the plaintiffs' hotel for the benefit of the defendant bank. Grassi undertook his duties as Receiver and was represented in that capacity by the Bank's attorneys. The order of Supreme Court appointing Grassi as Receiver in the foreclosure action *authorized* the Receiver to keep the premises insured against loss or damage by fire. Prior to the appointment of the Receiver the owners had procured a fire insurance binder on the premises effective until June 9, 1972. The premium on the binder had only been paid to the extent of $1,200 and an additional premium of $9,200 was due. At the time of renewal another $1,000 per month was required to keep the insurance coverage in effect. Mr. Grassi became concerned upon learning that the fire insurance on the premises might lapse and asked the Bank for their advice on the advisability of procuring extended fire insurance coverage. According to his testimony at a pretrial deposition, he was told by the Bank that the amount of money

required to be paid in order to keep the policy in effect was excessive; that the Bank did not have the necessary funds from the moneys received through the receivership; and that Mr. Grassi would be protected from liability by the Bank's obtaining a court order absolving the Receiver from any claim arising out of the absence of fire insurance coverage. It also appears that the Bank had previously negotiated a sale of the subject premises to the YMCA, the abutting land owner, which had agreed to demolish the subject building in order to expand its facilities. Thus, the Bank was allegedly not concerned with the risk of fire loss to the building with respect to its interest as mortgagee because its prior agreement provided that the building would be torn down upon the foreclosure sale. Mr. Grassi, however, was aware that the plaintiffs did possess an existing right of redemption in the mortgaged property and was concerned with the risk of his own liability to them in the event that the building burned down prior to the foreclosure sale and the termination of their right of redemption.

On June 19, 1972 the Bank's attorneys obtained a court order directing plaintiffs to show cause why an order should not be granted relieving the Receiver of the necessity to carry fire and extended insurance coverage of the subject property. The return date of the order to show cause was set for June 21, 1972. On June 22, 1972 a fire occurred on the premises causing substantial damage to the building. At that time the building was uninsured against fire loss, due to the lapse of the previous policy. On June 23, 1972 a Supreme Court Justice signed an order decreeing that Inis Grassi "is not required to carry fire and extended coverage insurance" and, further, that the Receiver is "released from any and all liability for failure to carry such fire and extended coverage insurance on said property". This order was obtained by the Bank on behalf of the Receiver without opposition from plaintiffs. It is their contention that the procurement of this order by the Bank, the Receiver and the defendant attorneys constituted a fraud on the court and an intentional tort upon the plaintiffs.

Approximately seven months after the procurement of the above order the Receiver was discharged by order dated February 14, 1973, his account approved and confirmed and the payment of his commission granted. Soon thereafter, on May 9, 1973 plaintiffs commenced this action for compensa-

tory and punitive damages, alleging the misconduct, negligence, recklessness and malpractice of the defendants, in concert, which prevented the plaintiffs from exercising their right of redemption and which wrongfully and improperly procured an order of the court in the foreclosure action dispensing with the necessity to maintain fire insurance on the property. The answer of the defendant, attorneys Johnson, Reif & Mullan, consisted of a general denial. The answer of the Bank and the Receiver in addition to a general denial pleaded three affirmative defenses, the third of which is the subject of this proceeding. The third affirmative defense alleges: "That at all times mentioned in the complaint he acted as an officer of the court in obedience to its orders and he is therefore immune from liability for the claims asserted in the complaint."

Thereafter, in October, 1974 plaintiffs moved for an order dismissing this defense on the ground that it was without merit. In an affidavit accompanying the motion plaintiffs alleged that Mr. Grassi was personally present at the fire on June 22, 1972, yet he failed to notify the court of its occurrence prior to the court's order relieving him of liability for failure to provide fire insurance. Plaintiffs contend that the order of June 23, 1972 should not be given retroactive effect so as to relieve Grassi of liability for an act which had already occurred and as to which the Receiver, the Bank and their attorneys had failed to apprise the court. Special Term denied the motion to dismiss the third defense and held that the Receiver may not be sued without an order of the appointing court granting permission therefor and until the appointing court vacates its order discharging him from liability granting leave to sue. Plaintiffs thereafter moved for reargument and in conjunction therewith sought the alternative relief of vacatur of the two orders within the foreclosure proceeding, to wit: (1) the order of Supreme Court dated June 23, 1972 releasing Grassi from liability for failure to carry fire insurance; and (2) the order of Supreme Court dated February 14, 1973 discharging Grassi, as Receiver; plaintiffs also sought leave to sue the Receiver for his alleged tort liability. Special Term entertained the motion but adhered to its prior determination to deny the motion to dismiss the third defense. Special Term also denied the alternative relief sought by plaintiffs on the ground of laches and prejudice to the defendant, Grassi. It is from this determination that plaintiffs appeal.

Special Term correctly denied plaintiffs' motion for a dismissal of defendants' third defense. Under the circumstances present in this case whether the Receiver should be held to be immune for failure to carry insurance, or whether his acts effectively destroyed plaintiffs' right of redemption is dependent upon many questions of fact, to be resolved at a plenary hearing with sworn witnesses and documentary proof, so that the question of law as to whether the Receiver breached any duty owing a fiduciary may be fairly resolved. Under some circumstances a receiver may be held wanting in the performance of his duty and liable if he did not cause the property in his possession to be adequately insured against loss or damage. On the other hand, if the circumstances indicated that within the authority conferred upon him he acted in good faith, with care and prudence commensurate with the situation as it existed at the time, he may be immune from personal liability for losses resulting from his actions *(Meltzer v Grazi,* 10 AD2d 869). The defenses contained in the third defense being sufficient in law upon their face and issues of fact being present, plaintiffs' motion to dismiss this defense was pro. rly denied *(Levine v Levy,* 285 App Div 848).

Turning to Special Term's denial of plaintiffs' motion for an order vacating the order discharging the Receiver, it is well settled that where a receiver has been discharged and relieved from any and all liability as receiver, he may not be sued until the appointing court vacates its order discharging him and grants leave to sue *(Barton v Barbour,* 104 US 126; *Kilarjian v Kilarjian,* 32 AD2d 542; *Wildermuth v Pious,* 21 AD2d 912; *Town of Greenburgh v Shalleck,* 247 App Div 813; *Bonwit Teller, Inc. v Vanderbilt,* 9 Misc 2d 176; see, also, 2 Glenn, Mortgages, § 188.1; 2 Clark, Receivers [3d ed], § 549; 49 NY Jur, Receivers, § 107). Thus, plaintiffs cannot sue Grassi, as Receiver, until the appointing court vacates its order of discharge and grants leave to sue. We conclude that plaintiffs' motion seeking the vacation of the order of discharge and leave to sue the Receiver should have been granted. Special Term incorrectly denied this motion on the basis of laches and undue delay *(Matter of Frankle v MacMurray,* 241 App Div 767). Essentially, the defense of laches consists of an unreasonable delay by the plaintiff to the prejudice of the defendant. But mere delay, however long, absent the necessary elements to create an equitable estoppel, does not preclude the granting of equitable relief *(Weiss v Mayflower Doughnut Corp.,* 1 NY2d 310, 318). Further, the doctrine of laches does not apply

here because there was no evidence of prejudice to defendant resulting from the delay *(Kansas City Fire & Marine Ins. Co. v Hartford Ins. Group,* 43 AD2d 888).

Receivership by its very nature involves a weighty responsibility, and the failure to discharge it cannot be excused because of inadvertence, neglect, insufficient diligence or a misapprehension of legal principles. If it is shown at the plenary trial directed here that the claim against the Receiver arises by reason of some act or omission within the context of his official responsibilities as a Receiver, the receivership property may be looked to for whatever damages plaintiffs may prove. However, if the plaintiffs' claims against the Receiver are occasioned by acts or omissions outside the purview of the court's orders to the Receiver and the Receiver is personally, as distinguished from officially, responsible in contract or tort then, since a suit against him personally would be justified, he may be surcharged in this action for such claims arising out of his defalcations, negligence, misfeasance or contract liabilities (see *Morea v Muratore,* 214 NYS2d 491, affd 15 AD2d 671; Ann 20 ALR3d 967, Negligence —Receiver's Liability; 2 Clark, Receivers, §§ 549, 574 [a]; 49 NY Jur, Receivers, § 64 *et seq.).*

The order which denied plaintiffs' motion to dismiss the third defense should be affirmed; the order which denied vacation of the Receiver's discharge should be reversed and the motion seeking that vacatur together with leave to sue should be granted.

MARSH, P. J., MOULE, MAHONEY and GOLDMAN, JJ., concur.

Order [entered March 4, 1975] unanimously affirmed, without costs.

Order [entered March 29, 1975] unanimously modified in accordance with opinion by CARDAMONE, J., and, as modified, affirmed, without costs.