OPINION OF THE COURT
Frank Composto, J.
In this mortgage foreclosure proceeding, the receiver moves to enjoin the Environmental Control Board of the City of New York (Board) "from any further administrative enforcement proceedings against the Receiver on any existing violations *1106 issued by the Department of Air Resources [Department] or from issuing any new violations against * * * the Receiver * * * during the period of his Receivership”.
The receiver contends that the Board may not institute any proceedings against a receiver appointed in a mortgage foreclosure proceeding, during the pendency of the proceeding, without first obtaining the permission of the court having jurisdiction over the proceeding, nor may the Board impose any fines against the receiver as such fines will unduly divert funds needed to make repairs to prevent the deterioration of the security and that neither the Board nor the Department may direct the receiver to make repairs that exhaust the monetary limit in the appointing order.
The Department had issued four violations against the premises which the Board is seeking to compel the receiver to remedy and as set forth by the receiver the Board has proposed fines to enforce its direction of compliance with the violations as follows: "Type of Vio. Failure to Obtain or Display a Certificate of Operation” (issued May 9, 1979), "Proposed Fine $1,500.00”. A similar violation "No certificate of Operation and Defective Equip.” (issued Aug. 21, 1979) "Proposed Fine $1,250.00” and two "Smoke Emission” violations, respectively, dated May 7, 1979 and August 16, 1979 "Proposed Fine $250.00” for each violation.
The receiver predicates this application on the authority of Kilarjian v Kilarjian (32 AD2d 542). The court notes that the Kilarjian case had been cited with approval in 149 Clinton Ave. North v Grassi (51 AD2d 502). The doctrine enunciated by the Appellate Division is that "a receiver may not sue or be sued without the express permission of the court that appointed him” (Kilarjian v Kilarjian, 32 AD2d 542, supra). But that is a general rule of law, the rationale thereof long antedates Kilarjian. "The object of the rule was and is to protect estates * * * from unnecessary and expensive litigations, to preserve it for the equal benefit of those equally interested in its distribution. Its establishment was the legitimate and necessary result of attempts on the one hand by counsel for receivers to enlarge their fee bill by the parade of a register filled with notes of proceedings had in fruitless actions” (James v James Cement Co., 8 NY St Rep 490, 490-491).
Rules and doctrines of law are like mathematical formulae which should be applied to particular categories of prob *1107 lems for facile solution. But what is overlooked here is that the court in Kilarjian prior to its postulate of no actions by or against the receiver without the consent of the court stated (p 542), "In general, all claims pertaining to the distribution and apportionment of any funds coming into a receiver’s hands are for the court of appointment to determine * * * and creditors, though not parties to the suit, have a right to be heard”. The Appellate Division was most careful in prefacing its rule of law with the words "[i]n general”. The refinement and distinctive characteristic of foreclosure proceedings and receivers appointed therein relate only to matters of property rights, the funds realized in the operation of the property and their proper disposition amongst claimants. Perception of this distinguishing feature places the receiver’s request for an injunction against the Board into a whole different aspect, so that a completely different principle of law applies.
The Board is no claimant seeking rights in the res of this foreclosure action and is no creditor, in the commercial sense, bound by the laws relating thereto. The Board may be a creditor only to the extent that a penalty imposed for violation of law has not been paid. It must be recognized that what is here sought is not a determination of rights of claimants or creditors, nor the barring of a claimant, without the court’s consent, from obtaining preferential collection; but immunity from violation of law. The health and welfare of the community bars any consideration or nicety of distinction of special classes of violators, be they individual owners of property, corporate owners functioning through officers, management agents or receivers. The statutory definition of "owner” is all encompassing and includes the fee owner, lessee, mortgagee, vendee in possession, assignee of rents, receiver, executor, trustee, lessee agent or "any other person, firm or corporation, directly or indirectly in control of a dwelling.” (Administrative Code of City of New York, § D26-1.07, subd 45; Multiple Dwelling Law, § 4, subd 44.)
The "Legislative declaration” of public policy which this court must hallow is stated in section D26-1.03 of the Administrative Code entitled "Housing Maintenance Code.” "It is hereby found that the enforcement of minimum standards of health and safety, fire protection, light and ventilation, cleanliness, repair and maintenance, and occupancy in dwellings is necessary to protect the people of the city against the consequences of urban blight” and is further defined by the city *1108 charter in the creation of a Department of Environmental Protection "responsible for all those functions and operations of the city relating to * * * the prevention of air * * * pollution including, without limitation, the following * * * regulating or prohibiting the emission into the open air from any source, whether fixed or movable * * * of any harmful or objectionable substances including, but not limited to, smoke, soot, dust, fumes, flyash * * * and the installation, construction or alteration of equipment giving forth such emissions into the open air insofar as such emissions are effected thereby” (New York City Charter, §§ 1403, 1404, subd b, par [1]).
The enforcement of these salutary laws to protect the health and welfare of the citizens of the City of New York, has, for facility and expeditious enforcement, been taken from the criminal court and assigned to a civil court. The infraction of the law is not lessened or governed or measured by whether the penalty is labeled a fine or a judgment for a stated sum. In fact, continuance of the violation may be stopped by enlistment of the aid of this court in the nature of an order of injunction and such a proceeding takes precedence over a mortgage foreclosure proceeding.
Viewing the action of the receiver in the context of barring prosecution by a legally constituted governmental agency requires consideration and application of the authorities that treat with disfavor orders of prohibition against law enforcement agencies. As expressed by the court in Oleshko v New York State Liq. Auth. (29 AD2d 84, 87-88, affd 21 NY 778) "The difficulty with respondent’s position is that he asks the court to assume that the [Board] will violate his constitutional rights when it conducts the hearing. This we may not do * * * Moreover, we hold as a matter of discretion that rarely should an action for relief of the nature sought herein be maintained. In our view an article 78 proceeding will afford all the relief needed.”
In West Bronx Auto Paint Shop v City of New York (33 Misc 2d 29, affd 17 AD2d 772, affd 13 NY2d 730), but modified as to the breadth of the then rules of the Board, the constitutionality of the establishment of the Department of Air Pollution Control and its rule-making power and enforcement was reviewed and upheld. On the authority of West Bronx Auto Paint Shop (supra), the court in La Monica v Kretchmer (64 Misc 2d 821, 823), refused to enjoin the enforcement of the *1109 rules and regulations of the Board of Air Pollution Control on behalf of "Plaintiffs 'a corporation and its officers and employees * * * [stating] "The drastic remedy of temporary injunction is very rarely granted against enforcement of a criminal provision.” ’ ” (To the same effect see Matter of Taibbi v New York State Liq. Auth., 48 AD2d 568; Snap 'N' Pops v Dillon, 66 AD2d 219; Kelly’s Rental v City of New York, 44 NY2d 700.) As relates to civil enforcement of the Housing and Maintenance Code by the Housing and Development Administration of the City of New York (see Rubin v Hevro Realty Corp., 84 Misc 2d 1074, affd 55 AD2d 536; Housing & Dev. Admin, of City of N. Y. v Bryant Westchester Realty Corp., 90 Misc 2d 816; Housing & Dev. Admin, of City of N. Y. v Johan Realty, 93 Misc 2d 698; Lange v Joy, NYLJ, Dec. 9, 1977, p 4, col 2).
The receiver has not demonstrated to this court that the Board will not consider any of its proper objections and defenses, or that the civil penalties that may be imposed would not be appropriate in view of the status of the receiver, or the inability of the receiver to comply with the notices of violation. The definitive repairs and their cost have not been set forth in the papers before the court for consideration, nor why an application to this court to make the repairs, as shall be required, will not be feasible.
This court adopts the rationale enunciated in Johnson v Smith (297 NY 165, 171), wherein the court "rejected a contention that the failure of a county treasurer to obtain court leave and approval for a tax sale invalidated such a sale where the property was held by trustees appointed by the Supreme Court in reorganization proceedings [stating] In the absence of specific statutory provision restraining tax collection agencies during the pendency of the action, or during the receivership, there is no basis for a claim that the county or its treasurer should have sought permission from the court before selling the property for unpaid taxes * * * And, in any event, it is highly questionable whether the Supreme Court would have had jurisdiction in the first instance to enjoin the county from selling”. The failure of the Department to seek this court’s prior consent before imposing violations against the property held by the receiver, and the failure of the Board to seek prior approval to prosecute the noncompliance with the violations may not, ipso facto, be deemed to render such violations invalid nor bar the Board from instituting enforce *1110 ment proceedings. To paraphrase the court in Johnson (supra, p 172), the consequence of granting the relief sought by the receiver would be the creation of an immunity "by judicial fiat in favor of receiver-held property”.
Accordingly, the receiver’s motion is in all respects denied.