■ In the Matter of SCOTT LEVY, Respondent. CITY UNIVERSITY OF NEW YORK et al., Appellants. — In a proceeding pursuant to CPLR article 78, *inter alia,* to compel the City University of New York *et al.* to mark a 1978 neurobiology examination paper on the basis of questions given and answered and to issue petitioner a diploma in biomedicine, the appeal is from a judgment of the Supreme Court, Kings County (Monteleone, J.), entered March 31, 1981, which granted the petition to the extent that, *inter alia,* petitioner be permitted to retake the examination in neurobiology and, if petitioner passes said examination, the administration is directed to take "all the appropriate steps for certification that it would take for any other student who successfully completes the requirements for the Bachelor of Science and Medical Doctor Degrees". Judgment reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits. Petitioner was initially admitted into the biomedical program for the fall, 1975 semester at the Sophie Davis School of Biomedical Education. The program was intended to result in a student obtaining a Bachelor of Science degree from Sophie Davis and, ultimately, a Medical Doctor degree from a co-operating medical school. A student must complete the requirements for a Bachelor of Science degree in a maximum of five years. He is assured admission into the third year of a co-operating medical school if he successfully completes the Sophie Davis program and passes part I of the national medical boards. In the summer of 1978 petitioner took a course in neurobiology. Petitioner took the examination twice and failed both times. It was subsequently discovered that the re-examination was graded with a page of questions missing from petitioner's test paper. Petitioner was informed that he failed the examination, but was denied the right to see his test paper and how it was graded. He requested that the examination be graded on the basis of the questions actually answered in the test booklet. The

professor teaching the course informed petitioner that even if he was granted full credit for the questions on the missing page, his score would still have been a failing grade. The committee on course and standing determined that petitioner would be assigned a grade of "W" in neurobiology and placed on probation. The committee notified petitioner, by letter dated November 16, 1978, that "[t]o be removed from probation requires you to resolve your grade of 'W' in neurobiology by repeating the *course* next summer" (emphasis supplied). Petitioner failed to register for the course in neurobiology in the summer semester of 1979, alleging he was merely told that he must retake the examination. After the neurobiology course had commenced, petitioner received a letter from the committee on course and standing stating that he was being removed from the program due to his failure to register for the course. Petitioner appealed the decision and by letter, dated July 23, 1979, the committee reinstated petitioner, placed him on probation and required him to "take and pass neurobiology" in the summer of 1980. The summer of 1980 was the last semester in which petitioner could complete the program within the five-year time period. Petitioner had been scheduled to graduate in June, 1980, but his graduation was necessarily postponed until he completed and passed neurobiology with a grade of "B" or better, pursuant to the curriculum requirements. At that time petitioner also had to study for part I of the examination, offered in June, 1980 by the National Board of Medical Examiners. Petitioner failed the medical boards. By letter dated July 21, 1980, Stony Brook School of Medicine, the co-operating school to which petitioner had been previously "matched", rescinded its conditional offer to accept petitioner as a third-year medical student since it was informed that he had not passed the medical boards. Thereafter, petitioner completed the course in neurobiology and received a "D". By letter dated September 18, 1980 petitioner was notified of the committee on course and standing's determination to withdraw him from the program on the ground he had violated the condition of his probation by failing to complete the course in neurobiology at a passing level. The school offered petitioner a liberal arts degree from the College of Liberal Arts and Science, based on the work he had successfully completed. With this degree, petitioner could apply to medical school through the conventional premedical school process. Though academic matters are subject to judicial scrutiny, the issue reviewed in such a case is limited to whether the institution has acted in good faith or whether its action was arbitrary or irrational (*Matter of Olsson v Board of Higher Educ.,* 49 NY2d 408; *Tedeschi v Wagner Co.* 49 NY2d 652). The policy of judicial restraint in interfering with the administrative discretion exercised by an educational institution is founded upon sound consideration of public policy. When an educational institution issues a diploma to one of its students it is, in effect, certifying to society that the student possesses all of the knowledge and skills that are required by the chosen discipline. An educational institution is not required to confer a diploma before the student has demonstrated competence in accordance with the institution's academic standards (*Matter of Olsson v Board of Higher Educ., supra,* pp 413-414; *Matter of McIntosh v Borough of Manhattan Community Coll.,* 78 AD2d 839). In this case, the educational institution amply fulfilled its obligation to act in good faith when it initially required petitioner to retake the course and examination in the summer of 1979. Although cognizant of the professor's contention that petitioner would have failed the examination even if granted full credit for the missing page, the school offered to allow petitioner to retake the examination instead of dropping him from the program. This remedy was sanctioned by the Court of Appeals in a situation where there is a question as to whether the student seeking relief has actually demonstrated his competence in accordance with the standards devised by the appropriate school

authorities (see *Matter of Olsson v Board of Higher Educ., supra*). Furthermore, requiring petitioner to retake the course in addition to retaking the examination was not unreasonable. On the contrary, the chance of passing the next scheduled examination in the course could only have been enhanced by petitioner retaking the course. Special Term concluded that the school's determination to require petitioner to retake the course and examination in neurobiology in the summer of 1980, at the same time when petitioner would have to prepare for the medical boards, was unreasonable, since any chance of meeting either of these goals was eliminated, especially in view of the petitioner's emotionally draining conflict with the school administration. However, the facts do not support such a finding. By letter dated November 16, 1978, the committee on course and standing unequivocally notified petitioner that he would be required to repeat the course in the summer semester of 1979. Petitioner failed to register for the course, in violation of the terms of his probation. Since the course had already commenced, the next scheduled course in neurobiology was, apparently, in the summer of 1980. The five-year time requirement in which petitioner had to complete the program was to terminate at the end of the summer semester, 1980. Therefore, the only semester in which petitioner could retake the course and examination within the five-year time requirement, upon which a student's admission into a co-operating medical school depended, was the summer of 1980. Any disadvantage resulting from the fact petitioner would have to simultaneously study for the medical boards was petitioner's creation, and not the result of an unreasonable act of the school. Since petitioner did not complete the course in neurobiology at a passing level and the five years in which to successfully complete the program had expired, the determination to withdraw petitioner from the program was neither arbitrary nor lacking in good faith. Although we are not unmindful of the emotional strain the school's determinations had upon petitioner, absent a showing that its acts lacked good faith or were arbitrary or irrational, it is an impermissible intrusion for a court to interfere by directing the school to offer petitioner a third opportunity to take the course in neurobiology and a fourth opportunity to pass the neurobiology examination. We also reject the other arguments raised by petitioner. The evidence in the record is insufficient to substantiate petitioner's allegations that after he had failed the medical boards in June, 1980, and prior to his completing the neurobiology course, the refusal of the school dean to sponsor him for his medical seat and to request the medical school to certify that he was eligible to retake the next scheduled medical boards, was either an *ultra vires* act, or that it demonstrated a lack of good faith. In any event, said refusal was *not* the causative factor for petitioner losing his medical seat at the Stony Brook School of Medicine or failing to complete neurobiology at a passing level. Damiani, J. P., Lazer, Gibbons and Rubin, JJ., concur.