Hancock, Jr., J.
(dissenting). Under both General Municipal Law § 22 (2) and Administrative Code of the City of New York § C17-3, the City may assert a claim for real estate back taxes against the proceeds of a fire insurance policy, only where the policy "insurfes] the interest of an owner [emphasis added]” in the property. Because I believe that the insurance policy in question, issued to a court-appointed receiver, does not insure the interest of an "owner” within the meaning of the statutes, I would affirm and hold that Cohen, not the City, is entitled to the insurance proceeds. Accordingly I dissent.
In 1980, defendant Bernard Cohen was appointed the receiver by Supreme Court in a mortgage foreclosure proceeding involving a parcel of realty improved by a one-story structure *986 housing seven stores. Pursuant to his duties, Cohen purchased from plaintiff a fire insurance policy to cover loss to the property during his receivership. The policy listed Cohen as the sole "named insured”.
On May 29, 1984, the premises were damaged by fire to the extent of $20,400. The City filed a certificate of special lien on the policy for unpaid property taxes and plaintiff, pursuant thereto, paid the entire proceeds to the City. When Cohen also demanded payment on the policy, plaintiff commenced this action to determine who is entitled to the proceeds. Both the City and Cohen cross-moved for summary judgment. Supreme Court held that neither General Municipal Law §22 nor Administrative Code § C17-3 (recodified as § 11-2801 [3]) authorized the City to claim against the policy. The Appellate Division affirmed, without opinion.
The fire insurance policy here plainly does not insure the interest of an owner. The sole named beneficiary is Cohen. As a court-appointed receiver, he obtained possession of the property, not title (see, Stokes v Hoffman House, 167 NY 554, 559-560; Kenney v Home Ins. Co., 71 NY 396, 401). Since this mere possessory interest in the premises as receiver clearly does not constitute ownership, the policy does not, on its face, insure the interest of an owner. The City argues, and the majority apparently holds, however, that a receiver is, among other things, a fiduciary on behalf of the owner and, therefore, an insurance policy for the benefit of a receiver should be treated as one "insuring the interest of the owner” (see, majority mem, at 985).
I disagree. It is well settled that a receiver is not an agent of the individual parties (see, Atlantic Trust Co. v Chapman, 208 US 360, 370-371; Matter of Schwartzberg v Whalen, 96 AD2d 974, 975; Kaplan v 2108-2116 Walton Ave. Realty Co., 74 AD2d 786; Jamaica Sav. Bank v Florizal Realty Corp., 95 Misc 2d 654, 656). Rather, a receiver is an officer of the court who acts solely at its direction and on its behalf. (See, Atlantic Trust Co. v Chapman, supra; Matter of Schwartzberg v Whalen, supra; 49 NY Jur, Receivers, §§ 1, 4.) While in a sense a receiver is a fiduciary who must act for the benefit of all parties interested in the property (see, Matter of Schwartzberg v Whalen, supra, at 975), a receiver must be "indifferent” between them (Atlantic Trust Co. v Chapman, supra, at 370), owing "allegiance only to the court and not to” any particular party (Jamaica Sav. Bank v Florizal Realty Corp., supra, at 656). In short, a receiver, such as Cohen, acts as an agent of *987 the court for the benefit of the parties collectively — not in interest of the titled owner or any particular party. Hence, I cannot agree with the majority that a receiver "stands in the same relationship to the tax lienor municipality as the owner does.” (Majority mem, at 985.)[1]
The City contends, nevertheless, that the policy must insure the owner’s interest in the property because a receiver does not himself have any insurable interest in it. Again I disagree. In Scarola v Insurance Co. (31 NY2d 411), we stated the rule that: " Tn general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against. Great liberality is indulged in determining whether a person has anything at hazard in the subject matter of the insurance, and any interest which would be recognized by a court of law or equity is an insurable interest.’ ” (31 NY2d, at 413, supra, quoting 44 CJS, Insurance § 175 [b].) (See also, 30 NY Jur, Insurance, § 752.) It is, therefore, not necessary that the party obtaining insurance have title to the covered property (see, Scarola v Insurance Co., supra, at 412-413; Riggs v Commercial Mut. Ins. Co., 125 NY 7, 12-13). It is sufficient if the party may be held liable, either personally or in his official capacity, for damage to property entrusted to him. For this reason a receiver has an insurable interest in the property under his control and may, therefore, obtain insurance for his own benefit (see, 149 Clinton Ave. N. v Grassi, 51 AD2d 502, 503, 506-507; 30 NY Jur, Insurance, § 759; 49 NY Jur, Receivers, §§ 64, 66).
Moreover, even assuming that the phrase "insuring the interest of an owner” could be considered ambiguous, I find nothing in the language of General Municipal Law § 22, Administrative Code § C17-3 or the legislative history which suggests that permitting the City to claim the proceeds of a fire policy issued to a receiver would further the underlying *988 statutory purpose. On the contrary, memoranda of officials concerned with the drafting and adoption of the legislation leave no doubt that the only purpose was to discourage owners of tax delinquent properties from burning their buildings, collecting the insurance proceeds and leaving the City with no assets from which to recoup the cost of demolition or collect the back taxes (see, e.g., Bill Jacket, L 1977, ch 738, Mem in support of legislation and news release of Senator John Flynn [Senate sponsor]; Mem in Support of Assemblyman Leonard Silverman [Assembly sponsor]; Letter of Assemblyman G. Oliver Koppell [initially a cosponsor in Assembly] to Governor, dated July 28, 1977; Mem of Secretary of State Mario Cuomo to Governor, at 3, dated July 25, 1977; Letter from Department of Commerce to Governor, dated Aug. 5, 1977).[2]
Depriving a receiver of his right to the insurance policy proceeds would certainly not serve the purpose of deterring other arson-minded property owners from their misdeeds. Nor is such a step necessary to preserve the fund since — unlike the arsonist-owner who decamps with the insurance money — the court-appointed receiver has a sworn duty to keep the fund intact. I find nothing in the legislative history supporting the statement that the purpose of the statute is to provide a municipality with "protection for direct, accelerated, and non-discounted payment of the proceeds” (majority mem, at 985). While the Legislature might choose to give a municipality a priority claim to insurance proceeds, it has not done so in this statute.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur in memorandum; Judge Hancock, Jr., dissents and votes to affirm in an opinion.
Order reversed, etc.

. Indeed, a receiver may obtain insurance only upon the court’s approval (see, 149 Clinton Ave. N. v Grassi, 51 AD2d 502, 503; Investors Ins. Co. v Gorelick, 108 Misc 2d 353, 355; see also, CPLR 6401 [b]). If the receiver fails to maintain insurance as directed or procures unauthorized insurance, he may be held personally liable for damages or the premiums, respectively (see, 149 Clinton Ave. N. v Grassi, supra, at 506-507; Investors Ins. Co. v Gorelick, supra, at 355).

. In Assemblyman Silverman’s memorandum in support of the legislation the purpose of the bill was stated as follows: "Arson is an increasing problem within the state, and studies indicate that a significant number of fires are set for profit. This bill is an effort to remove some of the profit by limiting the proceeds of insurance policies to those sums in excess of the amount already due but unpaid to the municipalities of the state on real property taxes. In addition, the cost to the municipality for removal of a safety hazard by demolition is to be recaptured from the proceeds.” In his letter to the Governor the Commissioner of Commerce stated: "The bill will enable taxing districts to collect taxes due where a fire destroys taxed premises, and will prevent owners of such premises from collecting all the insurance, then abandoning it, leaving it to the taxing district to pay for its eventual wrecking and removal.”