**FEDERAL HOME LOAN MORTGAGE CORPORATION, Plaintiff,**

v.

**SPARK TARRYTOWN, INC., People of the State of New York, the Town of Mount Pleasant, Village of North Tarrytown, and John Doe Nos. 1 To 20, Defendants.**

**VILLAGE OF NORTH TARRYTOWN, Third Party Plaintiff,**

v.

**Larry RUSH, Third Party Defendant.**

No. 92 Civ. 7053 (VLB).

United States District Court, S.D. New York.

Aug. 12, 1993.

Thomas B. Decea, Cooper, Liebowitz, Royster, & Wright, Elmsford, for plaintiff.

Laura Copland, Maroney Ponzini & Spencer, Tarrytown, for defendant Village of North Tarrytown.

Gregory R. Blatto, Bronx, for receiver.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This mortgage foreclosure action raises important issues with respect to the duties of a court-appointed receiver, the mortgagee, and municipal agencies where the property is not reliably generating sufficient funds to make urgently required repairs.

The receiver for the subject property was appointed by order dated September 29, 1992, for the purpose of collecting rents and profits for the benefit and to protect the rights of the plaintiff mortgagee, Federal Home Loan Mortgage Corporation ("FHLMC"). On May 27, 1993, I granted a judgment of foreclosure and sale to FHLMC. *Federal Home Loan Mortgage Corp. v. Spark Tarrytown*, 822 F.Supp. 137 (S.D.N.Y. 1993). The sale of the property has not yet taken place.

The receiver has moved for guidance with regard to priorities for expenditure of monies available to the receiver, for insulation of the receiver and his managing agent from personal liability for failure to correct violations of the housing maintenance code of the Village of North Tarrytown (the "Village"), and for a determination of whether the receivership should be terminated. The Village has opposed portions of the motion.

Where health and safety is at stake, it would not do for a receiver to devote attention to fears of potential personal liability. Accordingly, in the circumstances of this case, I grant the motion to the extent of determining that (1) the receivership shall continue, (2) the receiver shall have no personal liability for any acts or omissions in connection with the performance of his duties as receiver, and (3) the receiver shall proceed diligently to undertake exigent repairs of outstanding health and safety hazards to the property and shall seek to increase the monthly rent revenues, with the cooperation of the Village in advancing these goals, as set forth in part V below.

## II

The building involved in the present controversy was constructed between approximately 1885 and 1895. It includes 18 residential apartments of which 14 had been rented as of July 7, 1993, one commercial space and a superintendent's apartment. Monthly receipts between November 1992 and May 1993 ranged from $1,200 to $8,983 [1]. As of May 31, 1993 the receiver held a cash balance of $10,312.21 with respect to the property, which included an advance of $10,000 made by FHLMC at the time the receivership was established.

The receiver first inspected the building shortly after his appointment. Several weeks later, FHLMC provided the receiver with a copy of a report prepared by a professional consulting engineer dated August 12, 1992 concerning the condition of the building (the "engineer's report"). The estimated cost of repairing the building was $416,300, of which $337,350 represented "Priority A (Top Priority)" repairs, relating to "all life, safety and basic service issues." Defendant Spark Tarrytown, Inc.'s total indebtedness to FHLMC was $441,231.02 as of January 12, 1993. The appraised value of the property as of June 1992 was $275,000.

On October 1, 1992 the tenants were notified of the receiver's appointment and that all subsequent rents were to be paid to him. A majority of the tenants failed to do so. In March 1993 [2] the receiver instituted ten summary proceedings for non-payment of rent in the Village Court, pursuant to Article 7 of New York Real Property Actions and Proceedings Law, against those tenants who were in arrears.

Several months of settlement negotiations with Westchester/Putnam Legal Services, representing the respondent tenants, resulted in a tentative stipulation of settlement which was presented to the Village Court for execution on June 3, 1993. The receiver first met the Village housing inspector on that occasion, during which he learned that the prior owner had failed to cure violations placed on the building prior to the commencement of the foreclosure action [3] pursuant to Village Code § 30A–31 *et seq.* The receiver also learned that the housing inspector had recently inspected the building, finding such extensive violations that a vacate order could be placed on the premises [4] but that the housing inspector would not do so because he did not want to displace the tenants.

The receiver states that he was then informed about the following Village requirements:

(a) for each and every job done on the premises costing $100.00 or more, I would be required to purchase a work permit from the Village of North Tarrytown;

(b) any work performed would have to be done under [the housing inspector]'s supervision;

(c) any work performed would have to be done by a contractor licensed by the Village itself;

(d) [the housing inspector]'s housing inspection report was not complete, in that he had not performed an electrical or a plumbing inspection and that the placing of addition violations against the premis-

---

1. In paragraph 7 of his July 7, 1993 affidavit, the receiver states that if all the tenants paid their rents in full, the monthly revenue generated would be $7,357, while the attached Exh. B indicates income for some months above that amount. The receiver shall submit an explanation for this disparity.

   Notwithstanding this discrepancy, the maximum monthly revenue shown would not provide sufficient funds for requisite repairs.

2. The receiver offers no explanation for a delay of some four months in commencing such proceedings..

3. The Village claims to have a Village Court judgment against the prior owner for $25,000 in fines owed for building code violations and is seeking damages from him in a third-party action in the present litigation. See Report and Recommendation of United States Magistrate Judge Mark D. Fox, 92 Civ 7053 (August 10, 1993).

4. On June 14, 1993 the receiver was given a list of such violations dated March 18, 1993. In his reply affidavit, the receiver claims that most of these violations are duplicative of those found prior to his appointment. My ruling encompasses all exigent repairs.

es for electrical and plumbing problems was very likely.

In addition, the receiver asserts that he was told that "if, during the repair work done under his supervision, [the housing inspector] discovered the existence of additional, undocumented repairs, [the housing inspector] would prevent my contractors from completing their assigned tasks."

The order appointing the receiver dated September 29, 1992 authorizes the receiver to make repairs "necessary to the preservation of the Property" and to comply with the requirements of any municipal department, but requires the written consent of the plaintiff or its attorneys or the prior approval of the court for improvements or repairs exceeding $4,000 for any one repair or for incurring obligations in excess of the monies "in his hand."

At an unspecified time prior to seeking my guidance with respect to the management of the receivership, the receiver made an oral request to an attorney for FHLMC for funds to make the all of the repairs indicated in the engineer's report. FHLMC appears to have denied this request for an amount in excess of $337,000 on the grounds that it was fiscally unfeasible to invest the necessary funds. The receiver asserts that he has not sought permission from FHLMC or the court for single repairs costing over $4,000 each, as permitted in the order appointing the receiver, because such monies for repairs did not exist.[5]

The Village claims that the receiver has not made adequate efforts to make repairs, to use various available means to collect rents, and to find new tenants, and also challenges the reasonableness of the receiver's monthly commission of 5% and the additional 3% for the managing agent hired by him as provided by the order appointing the receiver.

III

Under 28 U.S.C. § 959(b), a "trustee, receiver or manager appointed in any cause pending in any court of the United States ... shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." Thus, New York law governs the substantive responsibilities and duties of the receiver in this case. Fed.R.Civ.P. 66 provides that federal procedural rules apply to the procedural aspects of actions in which a receiver has been appointed by a federal court.

A receiver acts "as an officer of the court and has the duty to preserve and protect the property pending the outcome of the litigation. As a result, [the receiver's] authority is wholly determined by the order of the appointing court." *Citibank, N.A. v. Nyland (CF 8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988); see *Security Pacific Mortgage and Real Estate Services, Inc. v. Republic of Philippines*, 962 F.2d 204, 211 (2d Cir.1992); *Jamaica Savings Bank v. Florizal Realty Corp.*, 95 Misc.2d 654, 407 N.Y.S.2d 1016, 1018 (Sup.Ct. Queens Cty.1978).[6] The order appointing the receiver in the present action authorizes the receiver "at any time, on notice to all parties ... [to] apply to this Court for further instruction and for further power necessary to enable the Receiver to properly fulfill his duties." Order Appointing Receiver in Foreclosure, Sept. 29, 1992 at 8.

Subsequent to the appointment of a receiver, "a court retains the equitable power to review the actions of the receiver and the propriety of continuing the receivership." *FDIC v. Kisosoh Realty Corp.*, 1992 WL 178600 at 3, 1992 US Dist LEXIS 10966 at 7 (S.D.N.Y., J. Leisure 1992), citing *500 West 172nd Street Realty, Inc. v. Romax Properties Corp.*, 126 Misc.2d 268, 481 N.Y.S.2d 846, 849 (Sup.Ct.N.Y.Cty.1984).

---

5. The receiver has authorized some repairs costing less than $4,000 to be made where such monies were available in the account; thus a worker is now making repairs at a flat rate, which is "a substantial savings for the estate."

6. A receiver is not the agent of the mortgagee, or of the party who sought his appointment, but is solely an arm of the court. *Jamaica Savings Bank*, 407 N.Y.S.2d at 1018.

■ A receivership "by its very nature involves a weighty responsibility," *149 Clinton Ave. North, Inc. v. Grassi,* 51 A.D.2d 502, 382 N.Y.S.2d 185, 189 (4th Dep't 1976), for the receiver must fulfill the legal and statutory duties of preserving and protecting the property while discharging fidiciary responsibilities.

■ The "accumulation of funds is a necessary incident of the receiver's duty to repair the premises, to keep emergency funds on hand and to ensure that regular upkeep and maintenance occur ..." *Kisosoh,* 1992 WL 178600 at 5, 1992 US Dist LEXIS 10966 at 13, thus evaluation of the performance of the receiver must take into account the ability of the receiver to comply with his duties.

## IV

■ In the present case, the root cause of the controversies is the dilemma created where aging residential property has fallen into disrepair and the property yields insufficient funds to finance the correction of municipal housing code violations or even of serious health and safety hazards. A receiver has been appointed with inadequate monies to carry out his authorized duties, and a municipality has been frustrated in its efforts to require the maintenance of appropriate housing units. A secured creditor, meanwhile, has been reluctant to pour additional funds into the property presumably constituting the security, but the marketability and monetary value of which are uncertain.

Nonetheless, the parties, and the receiver as a fiduciary and officer of the court, bear a responsibility to make every effort to resolve the issues presented to the extent possible in light of the resources available.

One of the problems here could be that due to lack of coordination among the personnel involved, the Village has unintentionally placed obstacles in the form of excessive or burdensome requirements which may prevent the receiver from performing repairs that might otherwise be possible within the financial resources of the income stream of the property.

All parties are directed to meet together to work out reasonable means of protecting the value and safety of the property and to make joint recommendations to the court where necessary.

## V

I direct that the receiver shall continue to act, collecting the rents and maintaining the subject property in accordance with my order of September 29, 1992, as modified by this order.

The receiver shall proceed diligently to expedite vital repairs and to increase monthly revenues through prompt resolution of any outstanding disputes with tenants and by seeking additional rentals, with the cooperation of the Village as set forth below. I have every confidence that the receiver will perform his duties in a prudent and effective manner in light of the exigent circumstances in this case.

1. Necessary maintenance and repairs including the correction of any substantial health or safety violations shall have priority over other uses of funds produced by the rental income on the property. A receiver, like an owner or possessor, would be required by any court of equity to use available funds for the most urgent health and safety requirements as a priority over other uses except necessary maintenance and, in fact, the order of September 29, 1992 so provides. Further, I increase to $10,000 the threshold for single exigent health or safety repairs which the receiver may make without seeking prior approval of the FHLMC or the court should such funds be available.

The receiver is to continue to cause truly exigent repairs to be made or begun immediately. While these initial repairs are proceeding, the receiver is to prepare within three weeks of the date of this order a list of priority health and safety hazard repairs and their cost, utilizing the engineer's report, the Village's inspection list of March 18, 1993, and any other reasonable sources. Such list is to be modified or updated as necessary and provided to the FHLMC and to the Village on a monthly basis, indicating which repairs have been completed.

2. The Village is expected to take whatever reasonable steps it can to remove or modi-

fy whatever barriers may exist with respect to Village regulations regarding such repairs. I also expect the Village not to interfere with repairs necessary to eliminate hazards to health and safety, and in particular to reconsider the necessity for work permits for urgent repairs whether or not exceeding $100, for supervision only by the Village housing inspector, or for employment only of contractors licensed by the Village, provided that the receiver notify the Village monthly of repairs undertaken and completed during the preceding month, as set forth in paragraph 1 above.[7]

3. The receiver shall apply to the court for approval of any written request for authority to cause to be made vital repairs costing over $10,000 or costing more than monies available in the account, if a request for such costs was submitted to FHLMC and denied.

As a receiver is not the agent of the mortgagee, see footnote 7 above, in deciding the motion now before me I need not reach the issue of the appropriate role of the lender in circumstances such as those presented here. But at such time as the FHLMC denies a written request for funds for exigent repairs and the receiver seeks further guidance from the court with respect to that request, FHLMC shall submit a memorandum of law in accordance with my Individual Rules of Practice on the scope of responsibility for urgent health and safety repairs of a plaintiff who is seeking to foreclose on property and has sought appointment of the receiver.

4. The accounting of receipts and disbursements provided in "Schedule A," attached as Exh. B to the receiver's moving papers, indicates that the $10,000 advanced by FHLMC at the beginning of the receivership still remains in the account; the receiver and FHLMC are directed to consider whether maintaining a reserve of that amount in the face of outstanding urgent health and safety repairs is appropriate.

5. With respect to seeking every possible avenue for increasing revenues, the receiver is directed to initiate requisite state proceedings for securing the release of any rents now held in escrow pursuant to a rent strike or otherwise, to be utilized for urgent repairs; the Village is to support any such application without regard to whether former violations have or have not been repaired. That one must repair property before getting monies to repair is a self-defeating proposition I would not expect the Village to maintain.

6. In instances in which the Village believes that other sources for increasing rental income might be available, it would be appropriate for the Village to investigate the possibility of such funding in light of the receiver's arguments with respect to the difficulties presented by the Village's suggestions.

7. If the Village believes that additional apartments could be rented, it would be appropriate for the Village to assist the receiver in curing any errors by the prior owner with respect to registration of the building or determining the proper rent, and to confirm that no violation of other town ordinances would be incurred, or that such violation would be waived.

8. FHLMC is reminded that it is to remit to the receiver any back rents recovered pursuant to part III of my memorandum order dated May 27, 1993 and the partial judgment against Spark Tarrytown, Inc., issued on July 19, 1993.

9. The receiver shall within three weeks of the date of this order submit a response to the Village's contention that total receiver and management fees are excessive for a building of the type at issue here, including any comparisons or statistical information.

10. When appointing the receiver in this case, the court did not contemplate that the receiver would be confronted with the conundrum presented here, i.e., potential personal liability where the building's cash flow did not even initially support exigent repairs.

Based on the facts of this case and the insufficiency of monies generated by the

---

7. The Village has appeared in this case, has received motion papers submitted by the receiver, and has not commented in its responding papers on the description of barriers to necessary repairs interposed by the Village Housing Inspector as quoted in part II above. Thus I treat the Village as having acknowledged that these facts are true.

property, I direct that the receiver shall have no personal liability for any acts or omissions in connection with the performance of his duties as receiver. This relief is to be distinguished from creating immunity " 'by judicial fiat in favor of receiver-held property,' " *Metropolitan Savings Bank v. Residual Realties, Ltd.*, 102 Misc.2d 1105, 425 N.Y.S.2d 508, 511 (Sup.Ct. Kings Cty.1980) (citation omitted). It leaves open to the municipality the option of bringing an action against the proceeds of the sale of the property where the receiver is properly carrying out his duties. The receiver's obligation to raise with FHLMC as the mortgagee the problems presented by lack of funds to complete critical repairs is referred to in paragraph 3 of this part V.

■ 11. Any suits against the receiver or the property shall be brought in this court. Generally, a receiver may not sue or be sued without the express permission of the court that appointed him, a "rule 'devised in order to protect the receiver and the estate against the harassment and expense of possibly unnecessary litigation and to preserve the estate for the benefit of all creditors equally.' " *Independence Savings Bank v. Triz Realty Corp.*, 100 A.D.2d 613, 473 N.Y.S.2d 568, 569 (App.Div.2d Dep't 1984) (citation omitted).

An action to enforce a housing code comes within the scope of this rule of New York law, because it "affects the res insofar as the costs of litigation, the expense of remedying any violations, and the payment of any penalties would presumably have to be borne by the receivership administration, the money coming from receivership funds or out of the property itself." Id. at 569–79 (citation omitted). My directive is also in aid of this court's jurisdiction and to protect or effectuate its judgments. 28 USC § 2283.

**SO ORDERED.**