**A. and B., Plaintiffs,**

v.

**C. COLLEGE and D., Defendants.**

**No. 94 Civ. 4165 (VLB).**

United States District Court,
S.D. New York.

Sept. 14, 1994.

---

**MEMORANDUM ORDER**

VINCENT L. BRODERICK, District Judge.

**I**

■ This case involved the question of the appropriate role of the judiciary in student disciplinary matters. It now concerns the question of whether or not the file in the case should be sealed so that the identity of the individuals and entities involved will not become public. I hold that it should be. The caption of this case is amended to read as above and will be corrected on the docket and other future filings. The file in this case including all documents therein shall be sealed.

Various parties to this case—and others as well—might be unnecessarily injured if charges untested and unproven contained in the file become public knowledge. The public may learn the nature of the issues presented in this case, which has been settled, without potentially harmful revelation of the names.

**II**

The incidents leading to this litigation began with a spree involving alcohol abuse initiated off campus. Most if not all of the individuals involved were students of "C" College. Students returned to a coeducational dormitory, where "A" allegedly engaged in sexual misconduct with "D." "B" then allegedly took undergarments of "D" and hid them in a wooded area.

Investigators for the College then interviewed "D". "A", "B" and others were questioned several times and some of them disciplined for giving inconsistent versions of the events.

While expulsion of "A" and suspension for one semester of "B" were under consideration, "A" and "B" were given less than two hours to decide whether or not "A" would voluntarily withdraw and "B" would voluntarily accept disciplinary community service. Both agreed, but thereafter brought suit in this court against the College and "D," invoking diversity jurisdiction. They sought injunctive relief and damages.

**III**

■ The particular details of this case aside, lawsuits of this type may be extremely harmful to the ability of an educational institution to maintain discipline so that the goals for which students attend are not destroyed. Alcohol abuse and substance abuse and other misconduct can only be permitted to occur at the cost of significant harmful effects. Judicial interference, treating discipline in such cases as equivalent to a civil or criminal

proceeding, is inappropriate. In particular, permitting suits for damages would have a chilling effect on proper management of the institution, and might lead to abuse of the judicial process.

In order to protect all of the interests at stake, and to minimize the risk of judicial involvement, it is important that institutions make the most effective possible efforts to implement or develop procedures which will minimize the many risks inherent in such situations. These risks include failing to exercise discipline where harmful acts occur, encouraging or pursuing false or malicious charges, or permitting investigations or internal adjudications to turn into abusive events.

## IV

■ New York law prohibits "arbitrary" action "by analogy to the law of associations, on the basis of a supposed contract between university and student, or simply as a matter of essential fairness in the somewhat one-sided relationship between the institution and the individual ..." where discipline imposed by a private educational institution results in suspension or expulsion. *Tedeschi v. Wagner College*, 49 N.Y.2d 652, 660, 427 N.Y.S.2d 760, 762, 404 N.E.2d 1302, 1303 (1980), *Olsson v. Board of Higher Education*, 49 N.Y.2d 408, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (1980); see *Garg v. Albert Einstein College of Medicine of Yeshiva University*, 747 F.Supp. 231, 236 (S.D.N.Y.1990); *Susan M. v. New York Law School*, 76 N.Y.2d 241, 246, 557 N.Y.S.2d 297, 300, 556 N.E.2d 1104, 1107 (1990); *Matter of Levy*, 88 A.D.2d 915, 450 N.Y.S.2d 574, 575 (2d Dep't), *aff'd* 57 N.Y.2d 925, 456 N.Y.S.2d 765, 442 N.E.2d 1276 (1982); *Garg*, 747 F.Supp. at 236.[1]

■ Where judicial intervention is sought in this context, equitable relief should be requested before irreparable injury occurs which might otherwise lead to damage claims. See *Piper v. Chris–Craft Industries*, 430 U.S. 1, 42, 97 S.Ct. 926, 949, 51 L.Ed.2d 124 (1977), quoting *Electronic Specialty Co. v. International Controls*, 409 F.2d 937, 947 (2d Cir.1969); see also *Susan M. v. New York Law School*, 76 N.Y.2d 241, 557 N.Y.S.2d 297, 300, 556 N.E.2d 1104, 1107 (1990). Equitable relief provides greater realistic protection to those potentially subject to discipline. If lawsuits with monetary objectives are encouraged, they might disrupt the functioning of academic institutions and intimidate academic decision makers seeking to perform their duties. See *FHLM v. Spark Tarrytown*, 829 F.Supp. 82, 87–88 (S.D.N.Y.1993).

## V

Where clearly reliable and impartial, if informal, procedures are followed, the risks outlined above—including that of triggering damage suits—may be minimized. Such procedures may involve, depending on the circumstances, efforts to mediate or settle disputes by voluntary withdrawal with no indication of disciplinary action on the record, or by the acceptance of sanctions rather than suspension.[2]

■ In many instances, misbehavior is admitted or is obvious. In other instances, where investigation or adjudication is required, and potential sanctions may lead to a permanent file or record entry, or to suspension or dismissal, procedures may be considered which if adopted by institutions confronting such problems may help to obviate the need for judicial intervention. Those worthy of such consideration may, depending on the circumstances, include:

---

**1.** Deference to administrative decisions in the educational context is greatest where necessarily subjective judgments of professional educators are involved, as in the case of grading, *Susan M.*, 76 N.Y.2d 241, 557 N.Y.S.2d at 297, 556 N.E.2d at 1104; *Tedeschi*, 49 N.Y.2d at 658, 427 N.Y.S.2d at 763, 404 N.E.2d at 1304, since the institution certifies to society by way of a diploma that the student "possesses all of the knowledge and skills that are required by the chosen discipline." *Levy*, 450 N.Y.S.2d at 575.

**2.** The military equivalent, known as "company punishment", involves similar minor sanctions where the member of the armed forces prefers to accept it in lieu of a court-martial which would create a permanent record. See 10 U.S.C. § 815; Note, 82 Yale L.J. 1481 (1973) (criticizing procedure), rebutted in Imwinkelried, "Unconstitutional Burden of Article 15: A Rebuttal," 83 Yale L.J. 534 (1974).

1. Use of an impartial decision maker chosen by the institution (who may be an employee of the institution who was not involved in investigating the matter);

2. Provision of notice as to the substance of the allegations against a student, including a description of what the student is said to have done to the extent such information is available, together with an explanation of the disciplinary action which might be imposed;

3. Affording to a person subject to possible discipline the opportunity to appear in person and to provide, reasonably in advance of appearance before the decision maker, any statements, documents, affidavits or other materials the student intends to offer in defense;

4. Permitting a person subject to possible discipline to suggest persons who might be interviewed by the decision maker, and to suggest questions which might be put to these or other potential interviewees.

5. Avoiding imposition of sanctions against anyone requested to answer questions merely because a decision maker disbelieves the witness or finds inconsistencies in statements, since such discipline may make it hazardous to give unpopular if truthful responses.

6. Permitting a person subject to possible discipline the opportunity to accept discipline voluntarily or to request a ruling by a decision maker as discussed above, after having had a reasonable time to obtain any desired advice.

It is not intended to be suggested here that these possible aspects of fair procedure should be mandated by judicial decision in public or private sector institutions, but rather than their adoption might be relevant to judicial willingness to accept institutional decisions if found subject to challenge notwithstanding the drawbacks of judicial intervention.

**SO ORDERED.**